**In re David Paul KOSENKA, Debtor.**

**In re Jeffrey Carl PARDUHN, Debtor.**

**Bankruptcy Nos. 89–60001, 88–61672.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Gary.

June 16, 1989.

P. Chael, Crown Point, Ind., Chapter 13 Trustee, pro se.

W. Jonelis, Gary, Ind., for D.P. Kosenka, debtor.

A. Sabato, Merrillville, Ind., for J.C. Parduhn, debtor.

MEMORANDUM DECISION ON CHAPTER 13 CASES WHILE CHAPTER 7 CASES ARE PENDING FOR THE SAME DEBTOR

FRANCIS G. CONRAD, Bankruptcy Judge.*

These matters [1] are before us on the motions of the Trustee to dismiss the Chapter 13 cases while Chapter 7, 11 U.S.C. §§ 101 et seq., cases are pending for the same debtor. We granted the Trustee's motion in the Kosenka case because the Debtor had not obtained a discharge in his Chapter 7 case prior to the filing of his Chapter 13 case. We denied the Trustee's motion in the Parduhn case because the Debtor's Chapter 13 case was filed after Parduhn had received his Chapter 7 discharge.

At pre-hearings on the motions to dismiss in these two Chapter 13 cases, consolidated at the request of the Chapter 13 Trustee,[2] we granted and denied respectively, from the bench, the Trustee's motion to dismiss the Chapter 13 cases involving Kosenka and Parduhn. The Chapter 13 Trustee asked that we issue a written Opinion to provide guidance to the bankruptcy bar of this District. We oblige him.

Kosenka filed his Chapter 13 case on October 7, 1988 while his Chapter 7 case was still pending. He received his Chapter 7 discharge on March 7, 1989. No final report and account had been filed by the Chapter 7 Trustee while the Trustee's motion to dismiss was pending.

Parduhn filed his Chapter 13 case on February 15, 1989. He received his Chapter 7 discharge on September 30, 1988. His Chapter 7 case was still open pending the Chapter 7 Trustee's final report and account.

 The issue is quite focused. May a debtor have a Chapter 13 case pending simultaneously with a Chapter 7 case? [3]

11 U.S.C. §§ 109(a) and (b) defines who may be a debtor under Chapter 7:

(a) Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.

(b) A person may be a debtor under chapter 7 of this title only if such person is not—

(1) a railroad;

(2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 USC 1813(h)); or

(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

11 U.S.C. § 109(e) defines who may be a debtor under Chapter 13:

---

* Sitting by special designation.

1. We have jurisdiction over these matters under 28 U.S.C. § 1334(b) and the General Order of Reference to this Court, No. 45. These proceedings are core matters under 28 U.S.C. § 157(b). This Memorandum Decision constitutes findings of fact and conclusions of law under F.R. Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. At a pre-hearing the day before the rulings on these motions, we had indicated, regarding the Parduhn case, to the U.S. Attorney that we would deny the Internal Revenue Service's mo-

tion on the same issue. Rather than create what the Asst. U.S. Attorney perceived as "bad precedent," the Internal Revenue Service withdrew its motion to dismiss. The Chapter 13 Trustee in these cases, and others, indicated, however, that he had several similar motions to dismiss and requested we rule on his motion to dismiss. He also asked that we consolidate the Parduhn case motion with Kosenka because the issue in these two Chapter 13 cases was quite focused. We granted the request.

3. This issue is known in bankruptcy jargon as one of several variations of the "Chapter 20" case.

(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

Neither of these subsections present a prohibition against two simultaneous Title 11 cases, but logic tells us a debtor must choose one chapter over another. In bankruptcy, however, our logic may fail us.

4. 11 U.S.C. § 706, **Conversion,** provides:

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1307, or 1208 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

(b) On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time.

(c) The court may not convert a case under this chapter to a case under chapter 12 or 13 of this title unless the debtor requests such a conversion.

(d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

5. 11 U.S.C. § 1112(a), **Conversion or dismissal,** provides:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—

(1) the debtor is not a debtor in possession;

(2) the case originally was commenced as an involuntary case under this chapter; or

(3) the case was converted to a case under this chapter other than on the debtor's request.

6. 11 U.S.C. § 1208(a), **Conversion or dismissal,** provides:

(a) The debtor may convert a case under this chapter to a case under Chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

7. 11 U.S.C. § 1307(a), **Conversion or dismissal,** provides:

Moreover, Title 11 is replete with references for conversion from one chapter to another, see, §§ 706,[4] 1112(a),[5] 1208(a),[6] and 1307(a).[7] These sections certainly indicate a preference by the drafters of Title 11 for a debtor to choose which section of the Code it desires to be adjudicated under.

The Trustee argues for a per se rule that only one chapter case at a time may be pending under Title 11. He did not, however, point to any statutory authority for his proposition. Punting at oral argument, he points to Rules of Practice and Procedure in Bankruptcy Rule 1015, Consolidation or Joint Administration of Cases pending in Same Court.[8] We rule the application of Rule 1015 to the matter sub judice is entirely inappropriate.

A reading of Rule 1015(a) shows that the rule does not address the filing of two or

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

8. Rule 1015, **Consolidation or Joint Administration of Cases Pending in Same Court,** provides:

(a) **Cases Involving Same Debtor.** If two or more petitions are pending in the same court by or against the same debtor, the court may order consolidation of the cases.

(b) **Cases Involving Two or More Related Debtors.** If a joint petition or two or more petitions are pending in the same court by or against (1) a husband and wife, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, the court may order a joint administration of the estates. Prior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interest. An order directing joint administration of individual cases of a husband and wife shall, if one spouse has elected the exemptions under § 522(b)(1) of the Code and the other has elected the exemptions under § 522(b)(2), fix a reasonable time within which either may amend the election so that both shall have elected the same exemptions. The order shall notify the debtors that unless they elect the same exemptions within the time fixed by the court, they will be deemed to have elected the exemptions provided by § 522(b)(1).

(c) **Expediting and Protective Orders.** When an order for consolidation or joint administration of a joint case or two or more cases is entered pursuant to this rule, while protecting the rights of the parties under the Code, the court may enter orders as may tend to avoid unnecessary costs and delay.

more petitions under different chapters by the same entity, but rather, as the Advisory Committee Note (1985) suggests, it is applicable when the same debtor is named in both voluntary and involuntary petitions; when a husband and wife have filed a joint petition under § 302; when two or more involuntary petitions are filed against the same debtor or by virtue of a transfer of one or more petitions from another Court. Moreover, the use of the words "the court may order consolidation of the cases" makes application of Rule 1015 permissive and discretionary with the Court.

Subsection (b) of Rule 1015 involves joint administration of cases where two or more petitions are pending in the same Court by or against a husband and wife or a partnership and one or more of its general partners, or two or more general partners or a debtor or affiliate. Again, the language of the rule indicates a Court *may* order a joint administration of the estate (emphasis ours).

Finally, there is a distinction between consolidation and joint administration which must be recognized. Consolidation of cases implies a unitary administration of the estate, and ordinarily is exercised when two or more petitions are filed by or against the same debtor, as opposed to joint administration which usually involves two different but related debtors. Consolidation depends upon substantive considerations which affect the substantive rights of creditors of the different estates. See, *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941). Joint administration, on the other hand, does not affect the substantive rights of the creditors. Rather, it entails the combining of estates by using a single docket for matters occurring during the estates' administration. See, Advisory Committee Note to Rule 1015 (1983).

We turn now to the question posed by the Chapter 13 Trustee; namely, whether a debtor may maintain two simultaneous bankruptcy cases, one under Chapter 7 and the other under Chapter 13. The precedents on this issue are divided into two camps. We side with the minority and hold that a debtor may file for Chapter 13 relief after receiving a Chapter 7 discharge but before the trustee's final account and report. We believe the majority misinterpreted and, consequently, misapplied the holding in *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) to conclude otherwise. Within the majority there are decisions which apply a concept that may be described as the "single estate rule." This rule prohibits a debtor from filing a Chapter 13 petition before the receipt of its discharge in a simultaneous Chapter 7 case. We adopt those cases within the majority camp that prohibit filing a Chapter 13 petition before receipt of a Chapter 7 discharge.

In *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434 (11th Cir. 1989), the Saylors filed a voluntary petition under Chapter 7 on May 20, 1987. The Saylors listed among other debts, a $65,000.00 debt owed to Jim Walter Homes, Inc., (Walter). A first mortgage on the Saylors' home secured this debt. On August 25, 1987, the Bankruptcy Judge discharged the debts listed in the petition. Thereafter, Walter sought and obtained relief from the automatic stay on December 29, 1987. On January 6, 1988, the Chapter 7 trustee filed his final report and abandoned all interests in the Saylors' property. Prior to the trustee's final report in the Chapter 7 case, Mr. Saylors filed a Chapter 13 petition on December 30, 1987, and listed as his sole debt the arrearage on the mortgage to Walter.[9] The Bankruptcy Court confirmed Saylors' Chapter 13 plan on January 26, 1988 over the objections of Walter. The District Court reversed. The Eleventh Circuit reversed the District Court on, inter alia, the issue before us:

> The district court also concluded that, as a matter of law, Saylors did not propose his chapter 13 plan in good faith. Two

---

**9.** We are aware of our holding in *In re McKinstry*, 56 B.R. 191 (Bkrtcy.D.Vt.1986) which held as a matter of law that a Chapter 13 plan may not cure a home mortgage arrearage when the debtor has received a Chapter 7 discharge. The matters sub judice do not encompass the *McKinstry* issue.

factors had a significant influence on the court in reaching this decision. The first was that Saylors filed his chapter 13 petition before the chapter 7 trustee filed his final report. This factor, however, is not dispositive on the issue of good faith. If it were, a debtor effectively would be barred as a matter of law from filing a chapter 13 petition during the period between the debtor's receipt of a chapter 7 discharge and the filing of the final report by the chapter 7 trustee. The language of the Bankruptcy Code suggests no such rule. The Code provides that the 'court shall confirm a [chapter 13] plan' if the debtor meets certain conditions. 11 U.S.C. § 1325(a). The receipt of a prior chapter 7 discharge does not prevent the debtor from meeting any of the listed conditions. See § 1325(a)(1)–(6). A per se rule barring the filing of a chapter 13 petition during the period at issue would also conflict with the purpose of Congress in adopting and designing chapter 13 plans. In *Perry v. Commerce Loan Co.*, 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966), the Supreme Court held that the statutory provision barring a debtor from receiving a chapter 7 discharge within the first six years following the receipt of another discharge in bankruptcy does not apply to a chapter 13 petition filed after the receipt of a bankruptcy discharge. The Court reasoned that the application of the six-year bar to chapter 13 plans would prevent deserving debtors from utilizing the plans and thereby collide with the purpose of Congress in adopting and designing these plans. Id. at 399 and n. 6, 86 S.Ct. at 857 and n. 6. We similarly are convinced that barring a debtor, as a matter of law, from filing a chapter 13 petition during the period at issue would collide with the purpose of Congress in adopting and designing chapter 13 plans. A chapter 7 trustee has the duty to 'close the estate as expeditiously as is compatible with the best interests of parties in interest.' 11 U.S.C. § 704(1). As a prac-

tical matter, however, the trustee often cannot fully close the estate until a considerable time has elapsed since the chapter 7 discharge. A rule barring all debtors from taking advantage of chapter 13 during this period could defeat Congress's intent to the same extent as would a flat six-year prohibition.

*Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, supra, 869 F.2d at 1437–38 (11th Cir.1989) (footnotes omitted).

In *Helbock v. Strause (In re Strause)*, 97 B.R. 22 (Bkrtcy.S.D.Cal.1989), Bankruptcy Judge Bowie sets forth an excellent decision for the emerging minority that hold a debtor who has received a discharge in a case under Chapter 7 is not prohibited from filing a subsequent case under Chapter 13 although the Chapter 7 case remains technically open. Bankruptcy Judge Bowie correctly points out the fallacy of most of the Courts within the majorities' camp—their misinterpretation and misapplication of the correct holding by the Supreme Court in *Freshman v. Atkins*, supra.

 In *Freshman*, the referee recommended that the debtor's application for a discharge be denied. For some reason, the District Court never acted on the referee's report. The matter remained dormant until 1922, when the debtor filed a second voluntary petition. He sought and obtained a favorable recommendation from a subsequent referee that the previously listed debts be discharged. The (District) Court sua sponte took judicial notice of debtor's earlier application and "denied the second, in respect to the creditors included in the first petition; granted it as to the additional creditors (post-first petition); and, upon an inspection of the record, denied, by a separate order, the discharge sought under the original proceeding." Id., 269 U.S. 122, 46 S.Ct. at 41, 70 L.Ed. at 194 (1925). The *Freshman* Court concurred with the conclusion reached by the lower Court's application of a form of judicial preclusion;[10] namely, parties are not

---

**10.** See e.g., "Judicial estoppel." Judicial estoppel applies to preclude a party from assuming a position in a legal proceeding inconsistent with

one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system. *Oneida Motor Freight, Inc. v.*

entitled to a second suit on matters not yet resolved by a first suit:

> [T]he same conclusion, which is, in effect, that the pendency of the first application precluded a consideration of the second in respect of the same debts. In this conclusion we concur. A proceeding in bankruptcy has for one of its objects the discharge of the bankrupt from his debts. In voluntary proceedings, as both of these proceedings were, that is the primary object. Denial of a discharge from the debts provable, or failure to apply for it within the statutory time bars an application under a second proceeding for discharge from the same debts.... But the objection that the issue is already pending, as that it has been adjudged, goes to the right of the bankrupt to maintain the later application, not to the question of the evidence or grounds upon which the relief may be granted if the application be maintainable. The refusal to discharge was not on the merits but upon the procedural ground that the matter could not properly be considered or adjudged except upon the prior application. This application had been reported upon adversely by the referee, was still pending, and, in ordinary course, could have been considered and acted upon by the court. To ignore it and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court, if not a clear effort to circumvent the statute by enlarging the statutory limitation of time within which an application for a discharge must be made.

*Freshman v. Atkins,* supra, 269 U.S. at 122–23, 46 S.Ct. at 41–42, 70 L.Ed. at 194–95 (citations and text omitted).

The *Strause* Court correctly noted, inter alia, the limited holding in *Freshman* was not that two cases cannot be pending at the same time, indeed:

> First, although the language of *Freshman v. Atkins* suggests two proceedings cannot be pending at the same time, that is not the holding of that decision. To the contrary, it should be recalled that the new debts, scheduled in the second petition were discharged, notwithstanding the 'pending' first proceeding.

*Strause,* supra, 97 B.R. at 26 (emphasis in original).

In *In re Brown,* 51 B.R. 284 (Bkrtcy.D.C. 1985), the debtor's first Chapter 13 case was dismissed because of the debtor's bad faith by failing to list, and making undisclosed, post-petition payments to an unsecured creditor. A month later, the debtor filed a Chapter 7 case and received a discharge. Six months after the receipt of the Chapter 7 discharge, the debtor filed yet another Chapter 13 case. The *Brown* Court refused to dismiss the second Chapter 13 case on the question of the debtor's good faith vel non because the debtor filed three successive bankruptcy cases. Instead, the Court decided to await the confirmation hearing before it would address the good faith issue. In so doing, the *Brown* Court distinguished *Freshman:*

> *Freshman v. Atkins,* 269 U.S. 121, 122, 123, 46 S.Ct. 41, [41, 41–42,] 70 L.Ed. 193 (1925) is readily distinguishable. There the Supreme Court applied the 'rule [analogous to res judicata] that the law will not tolerate two suits at the same time for the same cause' in holding that 'the pendency of the first application [for discharge of debts] precluded a consideration of the second in respect of the same debts.' In the instant Chapter 13 case, the Debtor seeks entirely different relief from that which she has already obtained in the Chapter 7 case. She obtained a Chapter 7 discharge in the first

*United Jersey Bank,* 848 F.2d 414, 419 (3d Cir. 1988) (citing *Scarano v. Central Railroad Co.,* 203 F.2d 510 512–13 (3d Cir.1953)). Accord, *Dwyer v. Haynes (In re Haynes),* 97 B.R. 1007, 1011 (9th Cir. BAP 1989) (citing inter alia, *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 211–12 (1st Cir.1987)). Its purpose is to protect the integrity of the judicial process from intentional inconsistency. *Bruner v. Taylor (In re Taylor),* 72 B.R. 696, 699 (Bkrtcy.E.D. Tenn.1987) (citing *Edwards v. Aetna Life Insurance Co.,* 690 F.2d 595, 598–99 (6th Cir.1982)). Accord, *In re Mitchell,* 80 B.R. 372, 378–79 (Bkrtcy.W.D.Tex.1987); *Caro Area Services for the Handicapped v. Michigan Dept. of Transportation (In re Caro Area Services for the Handicapped),* 53 B.R. 438, 441 (Bkrtcy.E.D.Mich. 1985).

case. Now, in the second case, she seeks to cure deed of trust arrearages, as allowed under Chapter 13 (see 11 U.S.C. § 1322(b)(5)) but not Chapter 7; to pay tax debts in interest-free installments, as allowed under Chapter 13 (see 11 U.S.C. § 1322(a)(2)) but not Chapter 7; and to pay at least a portion of and obtain a Chapter 13 discharge as to new debts not covered by the prior Chapter 7 discharge. *In re Brown,* supra, 51 B.R. at 285 (Bkrtcy. D.C.1985). The *Brown* Court specifically deferred until the confirmation hearing its final determination of the questions whether the debtor's plan in this case constitutes a "disguised liquidation plan," and whether the fact that it amounts to a zero-payment plan as to those creditors whose claims were discharged in the prior. Chapter 7 case constitutes bad faith.

Thus, the following opinions may be whittled away from the majority position because of their incorrect reliance on *Freshman* and its progeny for their erroneous per se premise that a debtor may not simultaneously maintain two case under any set of circumstances: see e.g., *Prudential Ins. Co of America v. Colony Square Co.,* 29 B.R. 432, 436–37 (W.D.Pa.1983), appeal dismissed, 725 F.2d 669 (3d Cir. 1983), cross appeal dismissed sub nom., *Appeal of Colony Square,* 725 F.2d 666 (3d Cir.1983), transferred to *Prudential Ins. Co. of America v. Colony Square Co.,* 40 B.R. 603 (Bkrtcy.N.D.Ga.1984), aff'd sub nom., *In re Colony Square Co.,* 62 B.R. 48 (N.D.Ga.1985) (held *Freshman* mandates that when a bankruptcy action is pending, a Bankruptcy Court cannot entertain a second petition involving the same debts); *In re Fulks,* 93 B.R. 274, 275–76 (Bkrtcy.M.D. Fla.1988) (cited *Freshman* for the proposition that "[a] debtor may not simultaneously maintain a Chapter 7 case and a Chapter 13 case *prior* to the Chapter 7 discharge") (emphasis ours). The *Fulks* Court dismissed debtors' Chapter 13 petition because of a pending Chapter 7 case, notwithstanding debtors' argument that they had received their discharge in the Chapter 7 case. See also, *In re Smith,* 85 B.R. 872, 873–74 (Bkrtcy.W.D.Okl.1988) (cited *Fresh-*

*man* as having "addressed a similar situation" to dismiss a second petition prior to the closure of debtors' first case after discharge had been entered in order to protect the court from abuse); *Appleton v. Belmore (In re Belmore),* 68 B.R. 889, 891 (Bkrtcy.M.D.Pa.1987) (citing *Colony Square Co.,* supra, to dismiss debtors' second petition while a case was still pending and after discharge was disallowed under §§ 727(a)(2) and (a)(4)); *In re Wead,* 38 B.R. 658, 659–60 (Bkrtcy.E.D.Mo.1984) (cited *Freshman* to bar debtors' second Chapter 11 petition while the first Chapter 11 case was still pending on the grounds that "[i]t is generally accepted that the pendency of one bankruptcy case precludes a consideration of a second case filed by the same debtor(s) and involving the same debts."); *In re Stahl, Asano, Shigetomi Associates,* 6 B.R. 232–33 (Bkrtcy.D.Ha. 1980) (cited *Freshman* as authority of the Court to dismiss sua sponte debtor's second petition after the Court dismissed debtor's prior Chapter XII Act case which was on appeal at the time of the second dismissal).

*Associates Financial Services Corp. v. Cowen (In the Matter of Cowen),* 29 B.R. 888, 894–95 (Bkrtcy.S.D.Ohio 1983), is representative of some of the decisions within the majority camp that apply what may be referred to as the "single estate rule." In *Cowen,* the debtors filed a Chapter 7 petition but for reasons left unexplained, did not obtain a Chapter 7 discharge until after the debtors had filed a second petition under Chapter 13. In what the *Cowen* Court denominated as a "de facto" Chapter 7 discharge prior to the Chapter 13 petition, the Court declared the Chapter 13 petition a "nullity," because: 1). "a. debtor may not maintain two simultaneous and separate bankruptcy proceedings;" 2). a debtor "possesses only one estate" and the filing of two simultaneous petitions "is contrary to the obvious contemplated function of the Bankruptcy Code to resolve debtor's financial affairs by administration of a debtor's property as a single estate under a single Chapter within the Code...." Id., 29 B.R. at 894. It is this second ground which we denominate a "single estate rule," i.e., where the debtor has yet to receive its

Chapter 7 discharge and has filed a Chapter 13 petition.

Additionally, the Cowen Court remarked that even if multiple filings were permitted, it could not be done "until at the earliest, after the granting of the discharge in the prior Chapter 7 proceeding." Id., 29 B.R. at 395. The *Cowen* Court discounted the latter circumstance if its essence is only to restructure debt that survived the earlier Chapter 7 proceeding, because such filings have been found to lack good faith. Some Courts will dismiss a debtor's Chapter 13 case when there is a Chapter 7 case pending, notwithstanding an entry of a discharge in the Chapter 7 case, on grounds that either the Chapter 13 petition was not filed in good faith or that such procedural machination prevented a finding of good faith during the confirmation hearing on debtor's Chapter 13 plan. See, *In re Heywood*, 39 B.R. 910, 911 (Bkrtcy.W.D.N.Y. 1984) (after citing *Freshman* for the proposition that simultaneous petitions in bankruptcy are not allowed, the Court dismissed debtors' Chapter 13 petition filed five months after the discharge in Chapter 7 but before the Chapter 7 case was closed, as a bad faith filing where the Chapter 13 petition listed only secured debts and no payment due unsecured creditors); [11] *In re Sanchez*, 20 B.R. 431, 432–33 (Bkrtcy.W.D. Tex.1982) (same); *In re Sardella*, 8 B.R. 401, 403 (Bkrtcy.S.D.Ohio 1981) (same); *In Matter of Troutman*, 11 B.R. 108, 109 (Bkrtcy.E.D.N.Y.1981) (same, bad faith prevented debtors from using the Chapter 7 to discharge unsecured debts and then use Chapter 13 to deal with their secured creditors); *In re Diego*, 6 B.R. 468, 469 (Bkrtcy. N.D.Cal.1980) (same). See also, *Geibank Industrial Bank v. Martin (In re Martin)*, 97 B.R. 1013, 1017 (Bkrtcy.N.D.Ga.1989) (debtor's filing a Chapter 7 petition, with a Chapter 13 case still pending, was abusive and invalid).

Because we hold it is not per se bad faith to file a Chapter 13 case after the receipt of a discharge in a still opened Chapter 7 case, we hold that under these circumstances, the good faith issue is not the filing of the petition. Rather, the issue is whether the debtor's proposed Chapter 13 plan, under these circumstances, is in good faith. This issue is properly left to the confirmation hearing.

In *In re Robinson*, 18 B.R. 891, 893 (Bkrtcy.D.Conn.1982), the creditor moved to dismiss the debtor's Chapter 13 case on two grounds; namely, that the debtor filed for Chapter 13 protection after the debtor's Chapter 7 discharge, or that the Chapter 7 case was still open when the Chapter 13 case was filed. While remarking that the debtor's action of filing the Chapter 13 petition when the Chapter 7 petition was still pending "is not to be viewed as a model for emulation," id., 18 B.R. at 893, the *Robinson* Court rejected both grounds by its refusal to adopt the per se bad faith position taken by the some of the Courts in the majority position to justify an immediate dismissal of the Chapter 13 case. Instead, the Robinson Court decided the question of good faith raised by the debtor's serial filing is "better reserved until the consideration of the plan." Id., 18 B.R. at 894.

In *In re Tauscher*, 26 B.R. 99, 101 (Bkrtcy.E.D.Wis.1982), the debtor filed a Chapter 13 case that was converted first to a Chapter 11, and then to a case under Chapter 7 because it exceeded the jurisdictional amount under § 109. After the debtor received its Chapter 7 discharge but before the trustee concluded his administration of the bankruptcy estate, the debtor filed a new petition under Chapter 13 listing only two debts that were excepted from discharge in the previous Chapter 7 case. On objection to the debtor's confirmation of its Chapter 13 plan by one of the creditors so listed in the debtor's Chapter 13 petition, on grounds of lack of good faith, the *Tauscher* Court was unable to find any legal or practical impediment to the debtor's Chapter 13 petition filing and found the two cases had separate estates:

---

**11.** The debtors did argue that they listed only secured debts because they felt their unsecured creditors had been discharged in their Chapter 7 proceeding. The *Heywood* Court seems to indicate that the failure to list unsecured debts is bad faith.

Over the years, there has been a truism in bankruptcy circles that a debtor cannot have two bankruptcy cases pending at the same time, and the court was itself concerned with the fact that Tauscher's present chapter 13 petition was filed prior to the closing of the earlier chapter 7 case. Aside from the questions of good faith or possibly abuse of process, however, the court has been unable to conceive of any legal or practical reason, and none has been suggested to it, as to why he should be barred from so filing.... Tauscher is in no wise (sic) involved in the preceding chapter 7 case anymore. That chapter 7 bankruptcy estate, as to which the trustee is attempting to sort out conflicting security interests of creditors, is totally distinct and separate from the estate in this chapter 13 case.

*In re Tauscher*, supra, 28 B.R. at 101.

In *In re Bumpass*, 28 B.R. 597, 599 (Bkrtcy.S.D.N.Y.1983), a mortgagee sought a dismissal of the debtors' second Chapter 13 petition for lack of good faith because the automatic stay imposed in the second Chapter 13 case was lifted by an earlier Chapter 7 case that was still pending at the time of the second Chapter 13 case. The debtors' first Chapter 13 case, filed to stop the mortgagee's pending State Court foreclosure action, was converted to a Chapter 7 case and the debtors thereafter received their Chapter 7 discharge. While the debtors' Chapter 7 case was still pending and after the mortgagee had obtained relief from the automatic stay, they filed their present Chapter 13 case one day before the mortgagee was able to complete its foreclosure sale. The *Bumpass* Court rejected the per se approach and held "[t]he fact that the debtors have a Chapter 7 case pending in this court does not per se bar the debtors from filing a separate Chapter 13 case, provided that the debtors qualify for relief under Chapter 13." Id., 28 B.R. at 599. The Court went on to note the distinction between a trustee in Chapter 7 and a debtor in Chapter 13 and rejected the mortgagee's res judicata argument that "[t]he lifting of the automatic stay during the Chapter 7 case vis a vis the Chapter 7

trustee, is not res judicata as against the debtor in a subsequent Chapter 13 case." *Id. See, In re Carter*, 84 B.R. 744, 747 (D.Kan.1988) (following involuntary conversion from Chapter 11 to 7, the Court held debtors lost right to convert to a Chapter 13 case. In dicta, the Court suggested that despite the bar, the debtors were free to file a new Chapter 13 case); *Nimai Kumar Ghosh v. Financial Federal Savings and Loan Association (In re Nimai Kumar Ghosh)*, 38 B.R. 600, 603–04 (Bkrtcy. E.D.N.Y.1984), app'l dismissed on other grounds, 47 B.R. 374 (E.D.N.Y.1984) (debtor's Chapter 7 case was converted to a Chapter 13 and then reconverted to a Chapter 7 case and the Court held the debtor was barred from again converting to a Chapter 13 case. In dicta, the Court suggested that despite the aforementioned bar, the debtor may file yet another Chapter 13 petition during the pendency of his Chapter 7 case and the good faith determination would be made at that time).

In *In re Ross*, 95 B.R. 509, 510 (Bkrtcy.S. D.Ohio 1988), the Court was confronted by a Chapter 13 debtor who had moved for confirmation of a proposed plan. The debtor had filed a Chapter 7 case in 1980. In 1986, the debtor filed a Chapter 13 case which was converted to a Chapter 7 case. Prior to the closing of that Chapter 7 case but after the discharge, the debtor filed a new Chapter 13 petition. The obligations scheduled to be repaid by the debtor's Chapter 13 plan were the mortgage on the debtor's home, which was scheduled in the Chapter 7 case, and a car. The Court stated:

[D]ebtors must choose their remedy carefully and must then expect to shoulder the burdens as well as the benefits of the particular remedy selected. While the Court is unwilling to hold categorically that circumstances cannot exist which would make a Chapter 13 appropriate soon after a Chapter 7 discharge has been granted, confirmation of a plan under those circumstances will depend upon the nature of the obligations proposed to be treated in the Chapter 13, the length of time between the filings, and the fore-

seeability of the circumstances which arose after the Chapter 7 which prompted the Chapter 13 filing.

Id., 95 B.R. at 510. Judge Sellers denied confirmation and dismissed the Chapter 13 case in the absence of express Congressional intent and controlling case law that would permit a debtor to use Chapter 7 to eliminate unsecured debts and thereafter use Chapter 13 remedy to deal with undischarged or secured debts. This holding, in our view, represents the correct approach, but not necessarily the correct holding, a Court should take when reviewing a "Chapter 20" plan.

Another case which supports our holding is *Perry v. Commerce Loan Co.*, 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966), reh'g denied, 384 U.S. 934, 86 S.Ct. 1441, 16 L.Ed.2d 535 (1966). In *Perry*, an Act case, the lower Court dismissed the debtor's Chapter XIII plan on the basis that the debtor had obtained a discharge in a "straight bankruptcy" within the six years of the debtor's filing of the instant petition under Chapter XIII. The Supreme Court reversed the lower Court despite a literal reading of the six year discharge bar under 11 U.S.C. § 32(c)(5) being applicable to a Chapter XIII confirmation of a debtor's extension plan. Although the debtor's first bankruptcy case was obviously closed and the debtor had received its discharge prior to the filing of the second bankruptcy case, the Perry case is relevant to the instant proceedings because it demonstrates that the successive filing of a wage earner petition subsequent to the filing of a straight bankruptcy was allowed even under the Bankruptcy Act. Accord, *Gayton v. Haney (In re Gayton)*, 61 B.R. 612, 613 (9th Cir. BAP 1986) (a previous discharge in bankruptcy under Chapter 7 within six years of a Chapter 13 petition does not automatically bar Chapter 13 relief or constitute a bad faith filing per se). We can see no bar under the Code to the filing of "Chapter 20" petitions under the correct circumstances.

In *Downey Savings And Loan Association v. Metz (In Matter of Metz)*, 820 F.2d 1495 (9th Cir.1987), on the same day the debtor received its Chapter 7 discharge, it "filed a proposed chapter 13 plan" and sought to cure delinquent mortgage payments and avoid foreclosure. None of the discharged Chapter 7 unsecured creditors were included in the debtor's Chapter 13 plan. The Bankruptcy Court dismissed its Chapter 13 plan, for reasons unrelated to the issue sub judice, without prejudice to refile. The mortgagee thereafter continued its foreclosure until the debtor filed a second Chapter 13 plan,[12] which prevented the mortgagee from completing its foreclosure sale. The mortgagee objected to the debtor's second Chapter 13 plan, inter alia, on the grounds that it was not proposed in good faith because it was a "zero percent" repayment plan to unsecured creditors and consecutive Chapter 7 and Chapter 13 filings constituted bad faith per se. The Ninth Circuit held that the debtor's "successive filing of bankruptcy petitions does not constitute bad faith per se.... Nevertheless, we agree with Downey (mortgagee) that Metz's (debtor's) successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements." Id., 820 F.2d at 1497 (citations omitted). The Court went on to hold that the debtor's Chapter 13 plan was not submitted in bad faith despite the fact it included a mortgage claim, and although the underlying debt was discharged [13] and provided for no payment to the discharged unsecured creditors. In another Ninth Circuit case, *Mortgage Mart, Inc. v. Rechnitzer (In re Chism)*, 847 F.2d 597, 600 (9th Cir.1988), the Court found changed circumstances that justified a Bankruptcy Court's finding of good faith in successive filings of two Chapter 13 petitions followed by a Chapter 7 filing, and upheld the denial of Bankruptcy Rules of Practice and Procedure in Bankruptcy Rule 9011 sanctions requested by a mortgagee.

---

**12.** The Metz Opinion uses the word "plan" as opposed to petition and we are unable to determine whether the Court meant petition.

**13.** But see, fn. 9.

The Seventh Circuit has long recognized the distinction between the good faith required in the filing of a bankruptcy petition and the proposal of a plan.

In *Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426 (7th Cir.1982), the Court set forth the requirement that good faith must be defined on a case by case basis, id., 669 F.2d at 431, citing, *In re Terry*, 630 F.2d 634, 635 (8th Cir.1980) (quoting, 9 *Collier on Bankruptcy*, paragraph 9.20 at 319 (14th ed. 1978)), and fashioned the following non-exhaustive factors to guide Bankruptcy Judges:

(1) Does the proposed plan state Rimgale's [debtor's] secured and unsecured debts accurately?

(2) Does it state Rimgale's expenses accurately?

(3) Is the percentage of repayment of unsecured claims correct?

(4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?

(5) Do the proposed payments indicate 'a fundamental fairness in dealing with one's creditors,' ...?

*In re Rimgale*, supra, 669 F.2d at 432–33 (footnote and citation omitted). In footnote 22 of *Rimgale*, the Court elaborated on "fundamental fairness:"

In this connection, the bankruptcy court may wish to examine the timing of the bankruptcy filings, the proportion of the total unsecured debt that is represented by the Ravenot [creditor] judgment, and the equities of classifying together ordinary consumer debt and a judgment debt arising out of intentionally tortious conduct....

Id., 669 F.2d at 433, n. 22.

In *Matter of Madison Hotel Associates*, 749 F.2d 410, 424–25 (7th Cir.1984), the Seventh Circuit stated:

Thus for purposes of determining good faith under section 1129(a)(3), as well as section 1325(a)(3), the important point of

inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. The district court's decision failed to make this legal distinction between the good faith that is required to confirm a plan under section 1129(a)(3) and the good faith that has been established as a prerequisite to filing a Chapter 11 petition for reorganization.

Id., 749 F.2d at 425 (emphasis in original).

In *Matter of Smith*, 848 F.2d 813, 818–821 (7th Cir.1988), the Seventh Circuit applied the "totality of the circumstances" good faith test and refused to apply a per se test to a Chapter 13 debtor's use of Chapter 13 in an attempt to discharge a debt that would otherwise not be dischargeable under Chapter 7. Id., 848 F.2d at 818–819. Like the *Madison* Court, the *Smith* Court also recognized that the Bankruptcy Court's findings must make a distinction between good faith in the filing of the petition and good faith in proposing the plan, although procedural schedules between the petition and the plan may make the good faith inquiries the same. Id., 848 F.2d at 816, n. 3.

In *In re Ligon*, 97 B.R. 398 (Bkrtcy.N.D. Ill.1989), the debtor filed a Chapter 13 petition which was dismissed. Thereafter, the debtor filed a Chapter 7 petition and obtained a discharge of all personal liability on his home mortgage. The debtor and the mortgagee were unable to enter into a reaffirmation agreement during the Chapter 7 case, consequently, the mortgagee obtained relief from the automatic stay and proceeded to foreclose on the debtor's home.[14] Before a commissioner's foreclosure sale could be completed, the debtor filed a Chapter 13 case and sought to cure the arrearage in the plan and make current mortgage payments outside the plan. Judge Ginsberg observed that the Seventh Circuit decision in *Smith*, supra would agree with the result in *Metz*, supra. He opined:

---

**14.** The facts of this case are distinguishable from *In re McKinstry*, fn. 9, supra, because here the debtor was unable to reach a reaffirmation

agreement with its creditors, whereas in *McKinstry* this fact was not made known to us.

This Court believes that the Seventh Circuit would follow both *Metz* and *Smith* if confronted by the issue before the Court in the instant case. It would not hold that the debtor's discharge of personal liability on the home mortgage in a Chapter 7 case per se permitted or prohibited the debtor's subsequent use of Chapter 13 to force the secured lender to accept a cure and reinstatement of that mortgage in a Chapter 13 plan. Instead, it is reasonable to conclude that the Seventh Circuit would use the same approach to this problem that it used with the nondischargeable debt problem in *Smith*, i.e., instruct the bankruptcy court in determining whether to lift the stay, convert the case to one under Chapter 7, dismiss the case, or confirm the plan to examine not only the narrow question of whether what Ligon [debtor] proposes to do is permissible as a matter of law under the Bankruptcy Code, but also the totality of circumstances leading up to the filing of the petition and the proposal of the plan.

Id., 97 B.R. at 403–404 (citations and footnotes omitted).

We hold that on the entry of discharge in a debtor's Chapter 7 case, the debtor may file a Chapter 13 petition prior to the closing of its Chapter 7 case. Additionally, and bearing in mind the distinction between good faith in the filing of the Chapter 13 petition and confirmation of the Chapter 13 plan, we hold Parduhn's seeking of bankruptcy protection under the aforementioned circumstance does not constitute per se bad faith filing of the Chapter 13 petition. We save for the confirmation hearing the issue of whether or not Parduhn's action in seeking relief under Chapter 13 after receipt of discharge from the "technically viable" Chapter 7 case affects the good faith requirement in proposing a Chapter 13 plan.

We hold further that the "single estate rule" prevents a debtor from filing a Chapter 13 petition before the receipt of a discharge from a simultaneous Chapter 7 case.