In re Joyce M. BULLOCK, Debtor.

**TRANSAMERICA CREDIT CORPORATION,
Movant,**

v.

**Joyce M. BULLOCK, Respondent.**

Bankruptcy No. 96–35415–T.
C.M. No. 96–1169.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 13, 1997.

---

Bruce White, Richmond, VA, Counsel for the Debtor.

D. Brian Costello, Costello & Hubacher, Alexandria, VA, Counsel for Transamerica Credit Corp.

Robert E. Hyman, Chapter 13 Trustee, Richmond, VA.

## *MEMORANDUM OPINION*

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On October 23, 1996, the court held a preliminary hearing on Transamerica Credit Corporations's motion for relief from the automatic stay. The court then scheduled a final hearing for November 27, 1996, at which time the court ruled from the bench that the motion would be denied. This memorandum opinion supplements the court's bench ruling.

### Findings of Fact

On April 28, 1989, the debtor executed a promissory note in favor of ITT Financial Services for $10,650.67 and provided, as security for the note, a second deed of trust on her home. Although the debtor used the loan to pay down existing debt, her financial condition continued to decline over the next 14 months. Finally, with creditors becoming more vociferous in their demands for timely payment, the debtor filed a petition under Chapter 13 of the Bankruptcy Code on July 24, 1990.

On August 7, 1990, the debtor proposed a 36–month plan under which she would pay unsecured creditors 34% of their claims. With no objection from the trustee, the court on October 26, 1990, confirmed the plan as proposed. The case then proceeded normally until the debtor's counsel, Ivan Morton, had his license to practice law revoked by the Virginia State Bar on January 18, 1991. Since Morton neglected to submit a motion to withdraw in the debtor's case or to inform the court that he had been disbarred, he was not removed as counsel of record until July 7, 1992. The debtor at that time decided not to employ new counsel, electing instead to proceed in her Chapter 13 case pro se. On February 22, 1994, she successfully concluded her plan and received a discharge.

The debtor testified at the hearing that, in the early months of the Chapter 13 case, Morton had informed her that her debt to ITT would be paid in full under the plan. The repayment schedule on the mortgage, however, extended well beyond February 1994. With the debtor having owed ITT $10,801.48 when the petition had been filed, the plan provided only that payments on the note would be kept current until the court closed her case. Unaware of this fact, and relying on the advice of her former counsel, the debtor made no payments on the ITT debt once she received her discharge.

To make matters worse, no one from ITT ever informed the debtor that a balance remained outstanding under the note. In fact, the record is unclear as to who actually owned the note when the debtor received her discharge. Either while the Chapter 13 case had been pending or at some time afterward, ITT had assigned the note to Thorp Consumer Discount Company. When Thorp later merged into Computer & Equipment Leasing Corporation, the latter took legal title to the note as successor in interest. Finally, on March 20, 1996, Computer & Equipment Leasing assigned the note to Transamerica Credit Corporation.

In this confusion, the debtor did not receive any communication concerning her delinquent mortgage until late 1995 or early 1996, when she was informed only that an action to foreclose would be commenced in

the near future. Faced again with the prospect of losing her home, the debtor retained new bankruptcy counsel, who advised her to file a petition under Chapter 7 of the Code. On June 10, 1996, she did so.

With the debtor apparently contemplating liquidation, Transamerica immediately moved for relief from the automatic stay. On August 30, 1996, the court granted the motion, and Transamerica scheduled a sale of the debtor's home for October 3, 1996. In the interim, the debtor dismissed her second attorney and retained her present counsel, Bruce White. On October 2, 1996, while her case was still pending and before she had received a discharge, the debtor filed a petition under Chapter 13 and proposed a 36–month plan. In her schedules, the debtor listed $61,207.28 in secured debt and no unsecured debt. While the debtor finally did procure a discharge in the Chapter 7 case on October 6, 1996, that case remained open on the date of the hearing.

On October 3, 1996, Transamerica filed an emergency motion for relief from the stay in this second Chapter 13 case. Calling the debtor an "abusive filer," Transamerica argued that she had misused the bankruptcy process by filing a Chapter 13 petition before she had received a discharge in her Chapter 7 case.[1] The debtor responded that good cause existed for the Chapter 13 filing, particularly since no one had not contacted her for over a year after the first Chapter 13 case had been closed.

### Discussion and Conclusions of Law

This dispute raises a specter which has tormented the judiciary for well over half a century—the propriety of simultaneous bankruptcy cases. Not surprisingly, the haphazard manner in which Congress developed a uniform federal law on bankruptcy appears to have contributed significantly to the problem.[2] In its original form, the Bank-

ruptcy Act of 1898 did not isolate substantive forms of relief within separate segments of the law. Petitioners filed for bankruptcy generally, not under any particular "chapter." With the advent of the Great Depression, however, Congress began to tack on "emergency legislation" designed to meet the particular needs of certain classes of debtors. For instance, the Act of March 3, 1933, added Chapter VIII as "Provisions for the Relief of Debtors";[3] the Act of June 7, 1934, added § 77B to Chapter VIII in order to provide for the reorganization of corporations; and the Act of August 6, 1937, added Chapter X as "Municipal Debt Readjustments."

In 1938, Congress passed the Chandler Act to refine and to structurally reorganize both these and additional changes. Chapters I through VII, though modified extensively, were left as "ordinary bankruptcy" provisions. Chapter VIII was stripped of all its sections except those regulating agricultural compositions and the reorganization of railroads. The provisions encompassing municipal debt readjustment were retained but moved to Chapter IX. Section 77B, governing the reorganization of corporations, was materially revised and enacted as Chapter X. Chapters XI and XII were designated to address general arrangements and real property arrangements respectively, while Chapter XIII was established to allow wage earners the opportunity to reschedule their debt in a plan. And in the final hours of debate, Chapter XIV was added to ensure the continued operation of financially distressed steamship lines.

By dividing the Act, and later the modern Code, into chapters which offered more specialized relief, Congress fashioned a "track approach" to bankruptcy. Debtors under the new system were forced to choose a chapter at the time of filing and then follow its corresponding track to discharge. Unfor-

---

**1.** Transamerica in its motion alleged almost every ground enumerated in 11 U.S.C. § 362(d) as a basis for granting relief. At the hearing, however, its counsel not only failed to offer evidence but argued only that the second Chapter 13 filing constituted sufficient "cause" under § 362(d)(1). The court therefore finds no reason to consider the motion on any ground other than this alone.

**2.** *See* 1 *Collier on Bankruptcy* ¶¶ 0.06–0.07 (James Wm. Moore et al. eds., 14th ed. 1974) for a concise history of the Bankruptcy Act of 1898 and its amendments.

**3.** Chapter VIII authorized compositions for natural persons (§ 74), compositions for farmers and other agricultural entities (§ 75), and the reorganization of railroads (§ 77).

tunately, Congress did not look beyond the linear structure of its law and foresee that some debtors would attempt to run more than one "train" at a time. As a consequence, the statutory law made little provision for the manner in which the chapters would interact and remained altogether silent as to whether a debtor could maintain two petitions under different chapters at the same time.

Thus, with no legislative comment on the propriety of simultaneous cases, and no decision from either the Supreme Court[4] or the Fourth Circuit on the subject, this court has no authoritative guidance on which to rely. The quandary is compounded by the fact that no true consensus has evolved among either the appellate or the trial courts. Some have concluded that, while the law may not expressly tolerate simultaneous cases, nothing in the Code prohibits a debtor from employing more than one case to obtain the desired relief. Other courts, in contrast, have turned to a rather old Supreme Court decision and to the "single estate rule" for principles which seem to suggest that the law disfavors simultaneous cases.

### The Atkins Decision

In *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925), the debtor filed a voluntary petition for relief in 1915 and, within the statutory time, applied for a discharge. Although the bankruptcy referee submitted to the clerk of the district court his recommendation that the application be denied, the court never issued a ruling or closed the case. In 1922, the debtor filed a second voluntary petition which listed both the debts identified in the first petition as well as others incurred in the interim. Again, the debtor properly applied for a dis-

charge, but this time, the referee advised that it be granted. Noting that the first application was still pending, the district court declined to discharge any debts which had been listed in the first petition. The court of appeals affirmed.

The Supreme Court observed that the district court's "refusal to discharge was not on the merits, but upon the procedural ground that the matter could not properly be considered or adjudged, except upon the prior application." *Id.* at 123, 46 S.Ct. at 42. Although the referee had reported adversely upon the first application, it "was still pending, and, in ordinary course, could have been considered and acted upon by the court." *Id.* at 123–24, 46 S.Ct. at 42. The Court held that "[t]o ignore it, and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court...." *Id.* at 124, 46 S.Ct. at 42.

Several courts operating under the present Code have cited *Atkins* as holding that two cases brought by the same debtor cannot be open at the same time. *See, e.g., In re Shockley*, 197 B.R. 677, 679 (Bankr.D.Mont. 1996); *In re Delaware Valley Broadcasters Ltd. Partnership*, 166 B.R. 36, 38 (Bankr. D.Del.1994); *In re Bodine*, 113 B.R. 134, 135 (Bankr.W.D.N.Y.1990); *In re Fulks*, 93 B.R. 274, 275 (Bankr.M.D.Fla.1988). I believe, however, that these decisions overstate the sweep of the Supreme Court's ruling.

It bears repeating that the Court in *Atkins* dismissed neither the debtor's second petition nor his second application for a discharge. In fact, the Court affirmed the district court's decision to discharge all those debts listed in the second application which had been incurred after the debtor had filed his first voluntary petition. In this light, and

**4.** In *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), a unanimous Supreme Court did address the "Chapter 20" case, that "particular type of serial filing combining consecutive individual consumer chapter 7 and chapter 13 cases." Lex A. Coleman, *Individual Consumer "Chapter 20" Cases after Johnson: An Introduction to Nonbusiness Serial Filings under Chapter 7 and Chapter 13 of the Bankruptcy Code*, 9 Bankr.Dev.J. 357, 357 (1992). Though finding that Congress had expressly prohibited several forms of serial filings

in 11 U.S.C. §§ 109(g), 727(a)(8), and 727(a)(9), the Court could discern no hint in the Code that serial filings of Chapter 7 and Chapter 13 petitions had been banned as well. *Id.* at 87, 111 S.Ct. at 2155–56. This fact, "combined with the evident care with which Congress fashioned these express prohibitions," convinced the Court that Congress "did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief." *Id.*

in the context of the present Code, *Atkins* does not preclude a debtor from maintaining two cases at the same time. At most, *Atkins* could be interpreted as stating that two cases *which seek to discharge the same debt* cannot be pending simultaneously, a principle which this case does not violate.

■ Unlike the posture of the debtor's Chapter 7 case, she does not seek to *discharge* her debt to Transamerica through the Chapter 13 filing. Section 1328(c)(1) provides that a Chapter 13 debtor will not be discharged of any debt "provided for under section 1322(b)(5)." Section 1322(b)(5), in turn, states that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim which the last payment is due after the date on which the final payment under the plan is due." The debtor's present Chapter 13 plan does just that.

Over the course of her plan, the debtor will make monthly payments of $285.82 to the trustee in order to cure an $8,000.00 arrearage under the note. This sum, however, does not even approach the principal balance of $24,800.00 due at the time she filed for relief. In fact, under the original terms of the note, the debtor's last installment would not have been paid until April 24, 2004. The promissory note to Transamerica therefore constitutes a debt on which the last payment will be due after the date on which she concludes her plan and, as such, will not be discharged at the conclusion of the Chapter 13 case. As a consequence, even a liberal construction of the principle espoused in *Atkins* has not been breached by the debtor's second filing.

### The Single Estate Rule

In *Associates Fin. Servs. Corp. v. Cowen,* 29 B.R. 888 (Bankr.S.D.Ohio 1983), the bankruptcy court provided a concise statement of what has come to be known as the single estate rule.

> The filing of two simultaneous bankruptcy petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve debtors' affairs by administration of a debtor's property as a single estate

under a single Chapter within the Code. The Bankruptcy Code provides different discharge remedies in different Chapters, and such remedies are intended to be exclusive of each estate.

*Id.* at 894. Although courts have disagreed over the reach of the rule, I can find none which have questioned its inherent truth. *See Grimes v. United States (In re Grimes),* 117 B.R. 531 (9th Cir. BAP 1990) (holding that, even though the first case still may be open, a debtor may file a second petition so long as the discharge has been entered in the first case); *but see In re Pickering,* 195 B.R. 759 (Bankr.D.Mont.1996) (rejecting *Grimes* and holding that a debtor can have only one case open at a time); *In re Studio Five Clothing Stores, Inc.,* 192 B.R. 998 (Bankr. C.D.Cal.1996) (criticizing *Grimes* and suggesting that the second petition must be filed after the first estate has been extinguished); *see also In re Kosenka,* 104 B.R. 40 (Bankr. N.D.Ind.1989) (finding the single estate rule to have been adopted by the majority of courts).

Notwithstanding the force with which the so-called single estate rule has been stated, its content simply has no foundation in either the language or the legislative history of the Code. In fact, the rule represents nothing more than a practical, judicial choice among competing philosophies in the face of a void left by Congress.

■ Even though I agree in general that a debtor should not have multiple pending bankruptcy cases, the court nevertheless must retain the ability to treat varying situations in an equitable manner and in keeping with the purposes of the Code. Thus, if the equities of a case so dictate and if a second filing will not materially hinder the efficient administration of the debtor's estate, the court may recognize the viability of the second case.

Not only should the debtor's petition have been filed in good faith and without an intent to abuse the bankruptcy process, but extreme circumstances must warrant the second filing. These conditions have been met here. Although the debtor appears to have suffered both from incompetent counsel and

from creditors who failed to urge a resolution of this matter outside bankruptcy, she has acted in good faith and stayed a proper course. When the Virginia State Bar revoked her first attorney's license to practice law, she continued in her case pro se and fulfilled her obligations under the plan. When ITT, Thorp, Computer & Equipment Leasing, and Transamerica all failed to give her notice of the post-Chapter 13 default and an opportunity to cure the arrearage, she rightfully looked to the Code as a means by which to restructure her debt. And when her second attorney for some inexplicable reason suggested that she file for relief under Chapter 7 instead of Chapter 13, she sought out new counsel and another lawful means by which to keep her home.

Neither has the debtor's Chapter 13 filing hindered the administration of her earlier Chapter 7 case. Five days after the debtor filed her second Chapter 13 petition, she received a discharge in her Chapter 7 case.[5] Although the Chapter 7 estate continues to exist until the case has been closed, 11 U.S.C. § 554(c), the entry of the discharge relieves the debtor of further influence and turns the matter completely over to the clerk's office. In addition, the debtor has not sought to "operate" both cases at the same time. In fact, she took no action in the Chapter 7 case after the August 30, 1996, order granting Transamerica relief from stay, and from that time forward, the Chapter 7 case was effectively dormant. In these facts the court simply can find no evidence that the simultaneous cases materially hindered the efficient administration of the debtor's estate.

### Conclusion

Having found no breach of either the Supreme Court's decision in *Atkins* or the single estate rule, the court holds that no cause exists for granting relief from the stay pursuant to 11 U.S.C. § 362(d)(1).[6] The court

ruled from the bench at the hearing on November 27, 1996, that the motion would be denied. Therefore, a separate order denying the motion will be entered, *nunc pro tunc,* November 27, 1996.

---

5. Several courts have suggested that a Chapter 13 petition can never be filed until a discharge has been entered in the Chapter 7 case. *See, e.g., Jim Walter Homes, Inc. v. Saylors (In re Saylors),* 869 F.2d 1434, 1437–38 (11th Cir.1989); *In re Kosenka,* 104 B.R. 40, 41–44 (Bankr.N.D.Ind. 1989). I, however, find such a distinction to be rather artificial and such a per se rule to serve no proper purpose. *See In re Studio Five Cloth-* *ing Stores, Inc.,* 192 B.R. 998, 1005 (Bankr. C.D.Cal.1996).

6. Of course, the viability of the debtor's Chapter 13 plan still must evaluated in light of the "good faith" hurdle found in 11 U.S.C. § 1325(a)(3). *See In re Fountain,* 142 B.R. 135, 137 (Bankr. E.D.Va.1992); *In re Hodurski,* 156 B.R. 353, 356 (Bankr.D.Mass.1993).