207 B.R. 373 (1997)
In re TURNER, Price G., Jr., and Turner, Joan E., Debtors.
Price G. TURNER, Jr. and Joan E. Turner, Appellants,
v.
CITIZENS NATIONAL BANK OF HAMMOND, Appellee.
BAP No. 97-50004, Bankruptcy No. 96-16189.
United States Bankruptcy Appellate Panel for the Second Circuit.
February 21, 1997.
As Amended March 4, 1997.
*374 Before: BROZMAN, CONRAD, and NINFO, Bankruptcy Judges.
MEMORANDUM DECISION AND ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL
The Appellants, Price G. Turner, Jr. and Joan E. Turner, joint chapter 13 debtors, have filed a motion pursuant to Bankruptcy Rules 8005 and 8011 to stay a foreclosure sale pending their appeal of the January 16, 1997 order of the Bankruptcy Court of the Northern District of New York that granted a motion for relief from the automatic stay filed by the appellee, Citizens National Bank of Hammond ("Citizens"). For the reasons that follow, the Turners' motion for a stay is denied.

Background
Besides having a sense of deja vu surrounding them, the following facts demonstrate the perils that may befall parties who choose a windy path instead of the direct route to their destination.
Just prior to the instant bankruptcy case, the Turners were owners of real property located at 4 Turner Lane, Hammond, New York 13646 in St. Lawrence County, which served as their primary residence. Citizens is the mortgageholder of the property and commenced a foreclosure proceeding against the Turners on January 31, 1996.
The Turners are no strangers to the doors of the bankruptcy court. On August 26, 1996, they filed a joint chapter 7 bankruptcy petition, which was given case number 96-14450 and assigned to Judge Robert E. Littlefield, Jr. in the Northern District of New York.
Within 2 weeks of the filing, on September 3, Citizens filed a motion to lift the automatic stay in order to continue its foreclosure. After filing their opposition on September 9, the Turners by their counsel advised the court on the day before the motion's return date that they were withdrawing their objection. On September 19, the Bankruptcy Court entered an order granting Citizen's motion to lift the automatic stay. The foreclosure sale on the property was scheduled for Monday, November 18.
On Thursday, November 14, the Turners filled out and signed their joint chapter 13 petition. The Turners scheduled 4 creditors in their petition: Citizens, Citizens' counsel, the referee for the foreclosure proceeding, and the tax collector for the town of Morristown. Instead of arranging for the petition to be filed straightaway with the bankruptcy court either by personal delivery, hand delivery or overnight courier, the Turners or their counsel deposited the completed petition in the mail.
On Monday, November 18, two pivotal events transpired. The first occurred at 10:30 a.m. at which time Citizens conducted a foreclosure sale of the property. Thomas L. and Michelle L. Camarda were the successful bidders, paying in excess of $50,000 to purchase the property. Citizens and the Camardas were apparently unaware that the Turners had sought chapter 13 protection.
The second significant event happened at approximately 11:27 a.m. when the clerk's office accepted for filing and time-stamped the Turners' joint chapter 13 bankruptcy petition it had received in that morning's mail. The case was given number 96-16189 and, like the chapter 7 case, assigned to Judge Littlefield.
On January 13, Citizens once again filed a motion to lift the automatic stay, this time in order to obtain authorization to deliver the property to the Camardas, the purchasers at the foreclosure sale. At some unknown point previous to this motion, either the Camardas or Citizens obtained an order from the state court in St. Lawrence County to compel delivery of possession and permit the Camardas to employ a county sheriff to evict the Turners.
*375 Once again, the Turners objected to Citizen's lift stay motion, but this time, they pursued the objection. On January 16, 1997, Judge Littlefield in a bench ruling granted Citizen's motion and lifted the stay over the Turners' objection. Judge Littlefield also ordered the Camardas not to pursue the execution of their order to compel delivery of possession for a period of at least 30 days after the entry of the order lifting the automatic stay.
On January 24, the Turners appealed Judge Littlefield's order terminating the automatic stay, and on February 6, sought a stay pending their appeal. Judge Littlefield denied their request for a stay on the dual grounds that the Turners had no likelihood of success on appeal and such a stay would harm the Camardas, the purchasers of the property. Thereafter, the Turners made an emergency motion for a stay pending appeal to this panel.

Discussion
This panel has read the recent decision of the Court of Appeals for the Second Circuit which cautioned lower appellate courts, after denying a stay pending appeal of a judicially authorized sale, not to lightly deny a party's motion for a brief stay to permit it to seek a stay pending appeal from a higher court because "a closing occurring immediately after a stay is denied will substantially limit the scope of an appeal." Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 105 F.3d 837, 839-40 (2d Cir.1997). As the Court described in that case, denying even a one-day stay may result in the party's loss of its opportunity to raise meritorious arguments in challenging a sale. However, the Court also noted that because there are occasions where substantial reasons exist for closing a sale promptly and assuring a good faith buyer that the sale cannot be undone, a stay should not be routinely given, even if it were to be a brief one. Id.
Bankruptcy Rule 8005[1] provides in pertinent part that "a motion for a [stay of the order of a bankruptcy judge] . . . may be made to the . . . bankruptcy appellate panel. . . ." In Hirschfeld v. Board of Elections, 984 F.2d 35, 39 (2d Cir.1992), the Court of Appeals established a four part test for determining whether to grant a motion for stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a `substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected."[2] As the moving party, the Appellants must show "`satisfactory' evidence on all four criteria." Bijan-Sara Corp. v. Federal Deposit Ins. Corp. (In re Bijan-Sara Corp.), 203 B.R. 358, 360 (2d Cir. BAP 1996) (quoting In re Charles & Lillian Brown's Hotel, Inc., 93 B.R. 49, 53 (Bankr. S.D.N.Y.1988)). Failure to satisfy one prong of this standard for granting a stay will doom the motion. Bijan-Sara Corp., 203 B.R. at 360 (citing Green Point Bank v. Treston, 188 B.R. 9, 12 (S.D.N.Y.1995)).
Although the standard developed in Hirschfeld was applied in the context of Rule 8A of the Federal Rules of Appellate Procedure, Bankruptcy Rule 8005 is directly adapted from Rule 8A. See F.R.Bankr.P. 8005 advisory committee's note (1983). Country Squire Assocs. of Carle Place, L.P. v. Rochester Comm. Savings Bank (In re Country Squire Assocs. of Carle Place, L.P., *376 203 B.R. 182, 183 (2d Cir. BAP 1996) (citing cases).
A. Irreparable Injury to Appellants Absent a Stay
It is evident that absent a stay pending appeal the foreclosure sale will be finalized and the Turners will be evicted from their home. Citizen's response to this facial prejudice is that because the Turners are seeking to sell the property under their chapter 13 plan it matters little if the sale happens sooner or later. We agree.
Although case law is legion that filing a bankruptcy petition to forestall a foreclosure sale is a permissible use of bankruptcy, the case must be undertaken "pursuant to a legitimate effort at reorganization." Putnam Trust Co. v. Frenz (In re Frenz), 142 B.R. 611, 614 (Bankr.D.Conn.1992) (citing In re Chisum, 68 B.R. 471, 473 (9th Cir. BAP 1986), aff'd, 847 F.2d 597 (9th Cir. 1988)). As long as a chapter 13 debtor meets the eligibility requirements set out in section 109(e) of the Bankruptcy Code, liquidating real property, including a primary residence, to fund a plan, is permitted, see In re Lindsey, 183 B.R. 624, 626 (Bankr.E.D.Idaho 1995) (citing cases), even if the sale were to occur post-confirmation, In re Erickson, 176 B.R. 753, 757 (Bankr.E.D.Pa.1995) (chapter 13 plan providing for future sales of realty to partly fund plan is not per se improper), although a bankruptcy court would view cautiously any such plan. Lindsey, 183 B.R. at 626.
Although the Turners claim that their intent is to sell their home as part of a chapter 13 reorganization, nonetheless, they had the benefit of knowing that a foreclosure proceeding has been pending against them for over a year since January 1996, and they took no action to either sell the property or come to an accommodation with Citizens. Eight months later, they filed for chapter 7 relief, and during that case, they withdrew their opposition to Citizens' pursuit of its state law foreclosure remedies against their home. The bottom line is the Turners do not intend to stay in the premises. Consequently, there is no irreparable injury to them if they are forced to leave now as a result of the foreclosure sale, to which they previously withdrew their objection. Additionally, if the Turners are correct in their assertion that the foreclosure sale was improper, they are entitled to sue Citizens for the value of their homestead exemption, assuming arguendo that any equity actually exists in the property. In re de Kleinman, 150 B.R. 524, 528 (Bankr.S.D.N.Y.1992); In re Liggett, 118 B.R. 219, 222 (Bankr.S.D.N.Y.1990).
B. Substantial Injury to Parties if Stay is Granted
This element looks to the harm to the party or parties whose judgment would be stayed. Citizens claims that if the Turners receive their stay, two parties will suffer injury, Citizens and the Camardas, who are the bona fide purchasers of the real property and lacked notice of the bankruptcy filing. However, the Turners allege that the Camardas are intending to use this property as a second home, an allegation which Citizens does not refute. While this lessens the potential injury to the Camardas, their funds are still tied up by virtue of a litigation to which they are not a party. In addition, Citizens will suffer some injury from its inability to satisfy its debt.
Because we have found that the Turners will not suffer irreparable harm if the sale is not stayed, the injury that Citizens will suffer is greater, thus weighing in favor of denying the Turners a stay.
C. Substantial Possibility of Success on Appeal
The Hirschfeld test requires that the Turners, as the moving parties, demonstrate a "substantial possibility" of success on appeal. Although those words have not been specifically defined in this Circuit, it is noteworthy that Hirschfeld took a middle approach between the more onerous requirement of "likelihood of success on appeal" and the more relaxed standard of mere possibility of a successful appeal. This intermediate level between probable and possible success reflects the Court of Appeal's intent to restrict appellate review to those parties with colorable claims while at the same time conserving *377 judicial resources by eliminating frivolous appeals. Country Squire, 203 B.R. at 184.
The Turners contend that the bankruptcy court erred in finding that their chapter 13 case did not commence at the time the clerk's office received the morning mail on November 18, 1996, rather than when the petition was actually time-stamped. As a result of its conclusion regarding the time of the commencement of the case, the bankruptcy court found that the automatic stay was not in effect to stay the foreclosure sale which took place prior to the time-stamping of the petition.
Citizens claims that even if the Turners are correct, section 549(c) of the Bankruptcy Code will prevent the chapter 13 trustee from avoiding the sale because a transfer of real property to a good faith purchaser without knowledge of the commencement of a bankruptcy case cannot be avoided. Therefore, Citizens argues, even if the Turners were to prevail on the issue of whether the automatic stay was in effect, the transfer to a bona fide purchaser cannot be undone. However, if the Camardas did not record their deed prior to the filing of the bankruptcy petition, which is the gist of the issue on appeal, the trustee could avoid the sale. See e.g., In re Ward, 837 F.2d 124 (3d Cir.1988).
However, of greater concern to this panel is not the narrow issue on appeal, namely, whether the automatic stay became effective at the time the clerk's office received the petition in the mail or when it was actually time-stamped, but rather, the propriety of the filing of the chapter 13 petition itself. For there is a troubling aspect to this entire case that has not been addressed by the parties: the Turners filed their chapter 13 petition while their chapter 7 case was still open and apparently before they had received their discharge. Because this panel believes that this issue is an important threshold matter which goes to the heart of a bankruptcy court's jurisdiction, we must address it here.
There is no dispute as to the timing of the petitions as described in the facts above. On November 18, the 83rd day after filing their chapter 7 case, the Turners again sought bankruptcy protection, this time under chapter 13.
This brings up the issue of whether the Turners could have received their discharge in their joint chapter 7 case prior to commencing their chapter 13 case. Consulting the appropriate notice provisions in the Bankruptcy Rules for the deadlines that must be met for a debtor to receive a discharge reveals that a discharge certainly cannot be received in less than 80 days under the best circumstances. 9 L. King et al., Collier on Bankruptcy, ¶ 4007.04[2] at 4007-11 (15th ed. rev. 1996). And that 80 days can be achieved only if on the date that the petition is filed, the clerk's office dockets the petition, prepares the mailing matrix, and mails the notice to creditors, giving the barest minimum of 20 days' notice to creditors under B.R. 2002(a)(1). Such a theoretical timetable does not take into account the fact that the clerk's office transmits the petition and creditor matrix to the bankruptcy automated notice system (BANS) for processing and preparing the initial notice to creditors. This notice would also have to set the initial § 341(a) meeting to be held within 20 days of the date of the notice, the setting of which date would also trigger the 60 day period in which a creditor can file an objection to the debtor's discharge, see B.R. 4007(c), or in which the United States Trustee can move to dismiss the case. See B.R. 1017(e)(1). Then, on that same day, the court would have to grant the debtor's discharge pursuant to B.R. 4004(c). Given that such a confluence of events is extremely unlikely, this panel suspects that a discharge was not issued prior to the Turners' commencement of their chapter 13 case.
Moreover, in this panel's experience, it would certainly be remarkable if a chapter 7 case were administered according to the barest minimum notice. The rule of thumb is generally 4 months from commencement of a chapter 7 case to the issuance of a discharge. While this is not dispositive of what occurred in the Turners' chapter 7 case, it is helpful to look at the deadlines set in the Turners' chapter 13 case by the initial notice to creditors. The petition was filed on November 18; the notice to creditors of the § 341(a) *378 meeting and other deadlines was not generated and mailed until November 21, three days later. The notice set the § 341 meeting for January 2, 1997, the equivalent of nearly 6 weeks' notice to creditors. If this case were one under chapter 7, the earliest date on which the Turners could obtain their discharge would be March 3, or 3½ months after the filing date. This illustrates that the Turners almost certainly cannot have been granted a discharge in their chapter 7 case at the time they sought chapter 13 relief.
Since the Supreme Court issued its decision in Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), it has been increasingly common for debtors who have been in chapter 7 to seek chapter 13 protection as a means of dealing with mortgage liens or nondischargeable claims that survive the chapter 7 discharge. In Johnson, The Supreme Court found that "Congress did not intend categorically to foreclose the benefits of chapter 13 reorganization to a debtor who has previously filed for chapter 7 relief." Id. at 87, 111 S.Ct. at 2156. The Court did not address whether a debtor may maintain a chapter 13 case during the pendency of a chapter 7 case. Such a coupling of these two cases has been described as a "simultaneous chapter 20" as opposed to a "serial or sequential chapter 20" in which the chapter 13 case is commenced after closure of the chapter 7 case. In re Hodurski, 156 B.R. 353, 354 (Bankr.D.Mass. 1993).
There is a decided difference of opinion over whether a debtor may ever simultaneously maintain two separate bankruptcy proceedings. In re Jones, 117 B.R. 415, 421 (Bankr.N.D.Ind.1990). In the first line of cases, courts have read an old Supreme Court opinion to be a strict prohibition against ever having two cases open simultaneously. In re Heywood, 39 B.R. 910, 911 (Bankr.W.D.N.Y.1984) (citing Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925)). The Heywood court premised its holding on the fact that a debtor possesses only one estate for the purpose of trusteeship and each bankruptcy must be administered as a single estate under a single chapter of the Bankruptcy Code. This continues to be the majority view. Norwalk Savings Society v. Peia (In re Peia), 204 B.R. 310, 314 (Bankr.D.Conn.1996). A minority view soon developed in some courts which declined to adopt a per se rule against such filings and permit a debtor to file a chapter 7, receive his or her discharge, and then file a second petition under chapter 13 to reorganize the debts which have not been discharged although certain administrative acts of the chapter 7 case such as the trustee's filing of a final report have not already been completed. In re Hodurski, 156 B.R. 353 (Bankr.D.Mass.1993); In re Kosenka, 104 B.R. 40 (Bankr.N.D.Ind.1989); Frenz, 142 B.R. at 614 n. 2 (citing cases). While the majority view may be viewed as an absolutist position, the minority view does run the risk of making available "an easy avenue for abuse of the bankruptcy system" that would allow debtors to file multiple cases if they do not achieve their intended goal in a particular case. In re Bodine, 113 B.R. 134, 135 (Bankr.W.D.N.Y.1990).
Despite these courts' differences as to the propriety of simultaneous filings, there is universal agreement among them that where a debtor files for chapter 7 relief and then files for protection under chapter 13 before receiving a discharge in the original chapter 7 case, that the chapter 13 case is a nullity because the filing of simultaneous petitions is "contrary to the obvious contemplated function of the Bankruptcy Code to resolve a debtor's financial affairs by administration of a debtor's property as a single estate under a single chapter within the code." In re Kosenka, 104 B.R. 40, 46 (Bankr.N.D.Ind.1989) (quoting Associates Fin'l Services Corp. v. Cowen (In re Cowen), 29 B.R. 888, 894-95 (Bankr.S.D.Oh.1983)). See also, Hodurski, 156 B.R. 353 (after learning that a debtor had filed a chapter 13 petition before receiving his chapter 7 discharge, the court sua sponte issued an order to show cause to dismiss the chapter 13 case).
What is especially noteworthy in the Kosenka case is the fact that the bankruptcy judge consolidated two motions to dismiss the petitions of the two unrelated chapter 13 debtors, Kosenka and Parduhn, both of whom had previously filed chapter 7 petitions. *379 Because Kosenka had filed his chapter 13 petition prior to receiving a discharge in his chapter 7 case, the judge dismissed his case. However, the judge did not dismiss Parduhn's case because he had filed his chapter 13 petition after receiving his chapter 7 discharge. Id. at 40.
The existence of multiple cases may indicate an exploitation of the bankruptcy process and an attempt at reimposing the automatic stay after it had been previously lifted. See Frenz, 142 B.R. at 614 (manipulating the judicial process by reimposing the automatic stay through multiple filings works an unconscionable fraud on creditors.); Peia, 204 B.R. at 314 (same); Hodurski, 156 B.R. at 356 (impeding a secured creditor's ability to proceed with state court foreclosure rights after obtaining relief from the stay in chapter 7 case is an exploitation of the bankruptcy process); GEIBank Indus. Bank v. Martin (In re Martin), 97 B.R. 1013, 1016 (Bankr. N.D.Ga.1989) (filing new case to create a new stay was abusive and invalid); In re Heywood, 39 B.R. 910, 911 (same).
In the case of simultaneous filings, this is especially likely since a debtor in most instances has an absolute right of conversion during the pendency of the case, obviating the need for a second filing. See §§ 706, 1112(a), 1208(a), and 1307(a); Kosenka, 104 B.R. at 42 ("Title 11 is replete with references for conversion from one chapter to another"); In re Jones, 117 B.R. 415, 421 (Bankr.N.D.Ind.1990). The only rationale for not converting an open case and filing a new petition is the creation of a new automatic stay. Consequently, by initiating a new case, the Turners effectively frustrated the stay relief, which they had not opposed, that the bankruptcy court had previously granted to Citizens.
Based on the foregoing, and leaving aside issues of potential bad faith of the Turners in commencing the chapter 13 case, this panel is of the opinion that the Turners' chapter 13 case is likely null and void from its inception and subject to dismissal for cause under section 1307(c). Accordingly, the likelihood of the Turners' success on appeal is indeed slim.
D. Affected Public Interests
Automatic stay proceedings are intended to be conducted expediently. 11 U.S.C. 362(e). The Turners have had the benefit of knowing that a foreclosure proceeding has been pending against them for over a year, and they took no action to either sell the property or come to an accommodation with Citizens. During the pendency of the foreclosure proceeding, they filed a no asset chapter 7 petition and withdrew their opposition to Citizens' pursuit of its state law foreclosure remedies against their home. Upon learning that they may have failed to claim their homestead exemption under section 522 through either their own or their counsel's inadvertence, they sought bankruptcy protection again, the sole purpose of which is to try to capture the exemption by delaying the foreclosure sale to which they had previously consented. Public policy favors finality in litigation. In re de Kleinman, 150 B.R. 524, 528 (Bankr.S.D.N.Y.1992). Such a use of the Bankruptcy Code as the Turners are seeking cannot be sanctioned by this panel. Therefore, this factor likewise weighs in favor of denying the stay.

Conclusion
For the foregoing reasons, IT IS ORDERED that the Turners' motion for a motion for a stay pending appeal is DENIED.
NOTES
[1] As an initial procedural matter, the Turners, as appellants, properly sought a stay pending appeal from the bankruptcy court prior to seeking similar relief from this panel. See B.R. 8005. See also, 10 King et al. Collier on Bankruptcy, ¶ 8005.09 at 8005-12 (15th ed. rev. 1996) (enumerating limited list of circumstances relieving appellant from applying to bankruptcy court first).
[2] As Judge Shiff noted in a recent B.A.P. decision, there is developing case law in this Circuit applying a higher standard in analyzing motions for a stay pending appeal. Country Squire Associates of Carle Place, L.P. v. Rochester Community Savings Bank (In re Country Squire Assocs. of Carle Place, L.P., 203 B.R. 182, 183 n. 1 (2d Cir. BAP 1996) (citing cases); see also Bijan-Sara Corp. v. Federal Deposit Ins. Corp. (In re Bijan-Sara Corp.), 203 B.R. 358, 360 (2d Cir. BAP 1996). This panel will likewise apply the standard articulated in Hirschfeld.