**In re Winfield LORD, Debtor.**

**No. 02–19778–608.**

United States Bankruptcy Court, E.D. New York.

June 27, 2003.

Gary Fischoff, Steinberg, Fineo, Berger, Barone & Fischoff, PC, Garden City, NY, for Debtor.

Michael Macco, Melville, NY, Chapter 13 Trustee.

DECISION AND ORDER

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the motion of the Chapter 13 Trustee seek-

ing dismissal of this Chapter 13 case based on the rule, adopted by a majority of the courts which have considered this issue, that simultaneous cases relating to the same debtor may not be maintained (even if under different chapters of the Bankruptcy Code). For the reasons set forth herein, the motion is granted.

### Facts

The facts relevant to this motion are not in dispute.

Winfield Lord ("debtor") filed his first petition as a joint Chapter 7 case with Michelle Beckett on or about September 19, 2001, under Case No. 01–21955–JF. A Chapter 7 discharge was granted to both joint debtors on January 25, 2002. On November 20 2001, in the Chapter 7 case, the Court granted an unopposed motion for relief from the automatic stay by Washington Mutual Home Loans, Inc., the holder of the mortgage on the debtor's residence. On January, 3, 2002 the Chapter 7 Trustee, Robert L. Geltzer, filed a letter with the court advising of the discovery of assets, consisting of a personal injury action commenced by the debtor prepetition. On March 7, 2002, the Chapter 7 Trustee filed a motion in the Chapter 7 case to compel the turnover of the file relating to the personal injury action, which, despite objections by the debtor, was granted on April 11, 2002. On August 2, 2002, with the Chapter 7 case was still open, debtor filed this Chapter 13 case, and Michael Macco was appointed as Chapter 13 Trustee. On November 18, 2002 the court in the Chapter 7 case entered an order authorizing the Chapter 7 Trustee to employ special personal injury counsel to prosecute the personal injury action on behalf of the Chapter 7 estate. Meanwhile, the Chapter 13 Trustee made a motion to dismiss the Chapter 13 case. Although the Chapter 7 Trustee has abandoned the Chapter 7 estate's interest in the debtor's residence pursuant to § 554 of the Bankruptcy Code, the Chapter 7 case still remains open, pending the Chapter 7 Trustee's resolution of the personal injury action and submission of his Final Report.

### Discussion

The Chapter 13 Trustee urges this Court to adopt the "per se" rule barring simultaneous bankruptcy cases, which is followed by the majority of the courts which have considered this issue, and to dismiss the Chapter 13 case currently pending before this Court. The debtor, however, contends that his Chapter 13 case was filed in good faith, after the discharge of his unsecured debt in the Chapter 7 case, in order to permit him to cure and reinstate his home mortgage, pursuant to § 1322(b)(5) of the Bankruptcy Code.

Although there is no statutory prohibition against maintaining two bankruptcy cases at the same time under separate chapters of the Bankruptcy Code, there is likewise no statutory permission to do so. The Trustee contends that some courts have misinterpreted Bankruptcy Rule 1015, which provides for consolidation of "two or more petitions pending in the same court by or against the same debtor," and for consolidation or joint administration of cases involving related debtors, as implying that simultaneous filings by the same debtor under different Chapters of the Code are permissible. This Court agrees with the Trustee that no such inference may be drawn from Bankruptcy Rule 1015, which, as the Advisory Committee Note states, is applicable when the debtor is named in both voluntary and involuntary petitions; when related debtors have filed petitions which should be consolidated or jointly administered; when two or more involuntary petitions are filed against the same debtor, or in similar circumstances.

Neither Bankruptcy Rule 1015, nor any provision of the Bankruptcy Code addresses the propriety of simultaneous cases under different Chapters with regard to the same debtor, nor does the absence of such a provision imply that Congress permitted such cases.

Lacking statutory guidance on this issue, the courts have split in two camps.[1] The majority of courts to address this issue have ruled that only one bankruptcy case may be pending at a time and for a given debtor. E.g., *In re Fulks*, 93 B.R. 274, 275 (Bankr.M.D.Fla.1988); *In re Smith*, 85 B.R. 872, 874 (Bankr.W.D.Okl. 1988); *In re Barnes*, 231 B.R. 482, 483–485 (E.D.N.Y.1999); *In re Heywood*, 39 B.R. 910, 911 (Bankr.W.D.N.Y.1984). This view, adopted by the Bankruptcy Appellate Panel of the Second Circuit in *In re Turner*, 207 B.R. 373, 378 (2d Cir. BAP 1997), holds that "a debtor possesses only one estate for the purpose of trusteeship and each bankruptcy must be administered as a single estate under a single chapter of the Bankruptcy Code." Under this view, a debtor is barred from filing a Chapter 13 petition before the Chapter 7 case is closed, even if the debtor has already received a discharge in the Chapter 7 case.

A minority of courts, however, have declined to adopt a *per se* rule against such simultaneous filings and have permitted a

---

1. The practice of filing a Chapter 13 case while a Chapter 7 case is still pending is sometimes referred to as a "simultaneous Chapter 20 filing." Unlike "simultaneous Chapter 20" filings, courts are in agreement that "serial Chapter 20" filings, in which the chapter 13 case is commenced after closure of the chapter 7 case, are not *per se* invalid. *See Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Since the Supreme Court issued its decision in *Johnson*, it has become increasingly common for debtors to file a chapter 7 in order to discharge their unsecured debt and to subsequently file a chapter 13 as a means of dealing with mortgage liens or nondischargeable claims that survive the Chapter 7 discharge. *See* K. March & J. Hildebrandt, "Is Bankruptcy a Solution or a Way of Life: When are Multiple Bankruptcies Permitted, When Are Multiple Bankruptcies Prohibited?" 25 Cal Bankr.J. 104, 111–12 (1999); *see also* Lex A. Coleman, "Individual Consumer 'Chapter 20' Cases after Johnson: An Introduction to Nonbusiness Serial Filings Under Chapter 7 and Chapter 13 of the Bankruptcy Code", 9 Bankr.Dev. J. 357 (1992) (explaining that a debtor, especially when a large percentage of his outstanding debt consists of a home mortgage, has a "tremendous incentive" for filing a Chapter 20 case, in order to first obtain a discharge of all his unsecured debt under a Chapter 7 and then file a Chapter 13 in order either obtain a discharge of debts otherwise nondischargeable under the Chapter 7 proceeding, or simply protect his home from foreclosure). Although recognize that there is no *per se* rule prohibiting "serial Chapter 20" cases, some courts have condemned this tactic as contravening the good faith requirements of § 1325(a)(3), when it is used solely as a means to pay nothing to general unsecured creditors in the Chapter 13, due to discharge of these debts in the Chapter 7, especially where such a "zero percent plan" would not be confirmable in Chapter 13.. *See In re Sardella*, 8 B.R. 401, 403 (Bankr.S.D.Ohio 1981) (the filing of a Chapter 13 petition four months after receiving a Chapter 7 discharge, in order to cure a mortgage default and a judgment lien on the debtor's residential property, in light of the fact that all other debts had been discharged, constituted "use of the bankruptcy remedies, Chapter 7 and Chapter 13, to accomplish by indirection what cannot be accomplished directly, namely, the proposal and confirmation to pay nothing to general unsecured creditors" in a Chapter 13 case, and was dismissed as a bad faith filing.) In assessing good faith pursuant to § 1325(a)(3), courts examine factors such as proximity in time of the filings; debts scheduled in the respective proceedings; and the effects of the imposition of a new stay on secured creditors. *See In In re Seman*, 4 B.R. 568 (Bankr.S.D.N.Y.1980); *In re Meltzer*, 11 B.R. 624 (Bankr.E.D.N.Y.1981); *In re Caldwell*, 151 B.R. 131 (Bankr.S.D.Ohio 1992); *In re Sanchez*, 20 B.R. 431 (Bankr.W.D.Tex. 1982); *In re Diego*, 6 B.R. 468 (Bankr. N.D.Cal.1980); *In re Heywood*, 39 B.R. 910 (Bankr.W.D.N.Y.1984).

debtor to file a second petition under Chapter 13 to reorganize the debts that have survived the Chapter 7 discharge, before the closing of the Chapter 7 case, provided the debtor had already received the Chapter 7 discharge. *In re Hodurski*, 156 B.R. 353 (Bankr.D.Mass.1993); *In re Kosenka*, 104 B.R. 40 (Bankr.N.D.Ind. 1989); *In re Saylors*, 869 F.2d 1434 (11th Cir.1989); *Helbock v. Strause (In re Strause)*, 97 B.R. 22 (Bankr.S.D.Cal.1989). The minority is concerned that although a Chapter 7 trustee has the duty to "close the estate as expeditiously as is compatible with the best interests of parties in interest" pursuant to Section 704(1) of the Bankruptcy Code, the debtor should not be subject to completion of "administrative hurdles" by the Chapter 7 Trustee, such as the filing of the final report, which are "beyond the debtor's control", before being able to file the Chapter 13 petition and propose a plan. *In re Hodurski*, 156 B.R. 353, 356 (Bankr.D.Mass.1993) (*citing In re Saylors*, 869 F.2d at 1438). Thus, where simultaneous Chapter 7 and Chapter 13 petitions relate to different assets and different debts, the minority finds that a court may properly entertain simultaneous cases for the same debtor. *See In re Strause*, 97 B.R. at 27–30; *In re Kosenka*, 104 B.R. at 51; *In re Tauscher*, 26 B.R. 99, 101 (Bankr.E.D.Wis.1982). Rather than prohibiting the filing of Chapter 13 petitions during the pendency of the Chapter 7 case, the minority line of cases assesses the propriety of the Chapter 13 case in light of the "good faith" standards by which "serial Chapter 20" filings are evaluated. *In re Hodurski*, 156 B.R. at 356–57; *In re Tauscher*, 26 B.R. at 101; *In re Strause*, 97 B.R. at 28; *In re Kosenka*, 104 B.R. at 51; *In re Saylors*, 869 F.2d at 1438; *In re Bumpass*, 28 B.R. 597 (Bankr. S.D.N.Y.1983).

This Court agrees with the majority rule articulated in *In re Turner*. There, the Bankruptcy Appellate Panel for the Second Circuit, faced with debtors who filed a Chapter 13 petition four days before the foreclosure sale of their home was to take place, and following the unopposed lifting of the stay of their pending Chapter 7 case, analyzed both the majority and minority rule on the permissibility of "simultaneous Chapter 20" filings, and observed as follows:

> While the majority view may be viewed as an absolutist position, the minority view does run the risk of making available "an easy avenue for abuse of the bankruptcy system" that would allow debtors to file multiple cases if they do not achieve their intended goal in the particular case.
>
> \*    \*    \*    \*    \*    \*
>
> The existence of multiple cases may indicate an exploitation of the bankruptcy process and an attempt at reimposing the automatic stay after it had been previously lifted. In the case of simultaneous filings, this is especially likely since a debtor in most instances has an absolute right of conversion during the pendency of the case, obviating the need for a second filing. The only rationale for not converting an open case and filing a new petition is the creation of a new automatic stay. Consequently, by initiating a new case, the [debtor] effectively frustrated the stay relief . . . .

*Id.* at 379 (Citations omitted).

Other courts have also voiced concerns regarding the potential for abuse of the Bankruptcy Code in permitting "simultaneous Chapter 20" filings, particularly where the stay has been lifted and the debtor files a Chapter 13 immediately before the foreclosure sale of his home, in an attempt to obtain another automatic stay and frustrate the foreclosure. *In re Hodurski*, 156 B.R. at 356 (impeding a se-

cured creditor's ability to proceed with state court foreclosure rights after obtaining relief from the stay in Chapter 7 case is an exploitation of the bankruptcy process); *In re Alicea Humbreto*, 2000 WL 760696, *1, 2000 Bankr.LEXIS 623, *2–3 (Bankr.E.D.Pa., 2000) (filing of a new Chapter 13 case while Chapter 7 case is pending to invoke a new automatic stay is a an impermissible "procedural gambit"); *In re Bodine*, 113 B.R. 134, 135 (Bankr. W.D.N.Y.1990) (to "permit debtors to maintain their second petition while the first is pending is an easy avenue for abuse of the bankruptcy system" that would allow debtors to file multiple cases if they do not achieve their intended goal in a particular case) (*citing In re Smith*, 85 Bankr. 872, 874 (Bankr.W.D.Okla.1988)); *In re Barnes*, 231 B.R. 482, 484–85 (E.D.N.Y. 1999) (impeding a secured creditor's ability to proceed with a foreclosure proceeding after the stay in the Chapter 7 case had been lifted by filing a Chapter 13 case and creating a new stay is not only *per se* barred by the majority rule but also constitutes "bad faith" warranting dismissal of the Chapter 13 case); *Putnam Trust Co. v. Frenz (In re Frenz)*, 142 B.R. 611, 614 (Bankr.D.Conn.1992) (manipulating the judicial process by reimposing the automatic stay through multiple filings works an unconscionable fraud on creditors).

That is exactly what occurred in this case. The debtor filed his Chapter 13 petition on August 2, 2002, approximately seven months after receiving his discharge in a Chapter 7 case on January 25, 2002. After obtaining relief from the automatic stay in the debtor's Chapter 7 case, the debtor's secured creditor scheduled a foreclosure sale on debtor's real property, which was stayed by debtor's Chapter 13 filing. The fact that the debtor filed after receiving a Chapter 7 discharge does not change this Court's view that debtor's filing of the Chapter 13 petition constitutes

an abuse of the bankruptcy system, particularly in light of the fact that debtor had the option of converting the pending Chapter 7 case rather than filing a new petition. As the *Turner* Court noted, the "only rationale for not converting an open case and filing a new petition is the creation of a new automatic stay." *In re Turner*, 207 B.R. at 379. By filing the Chapter 13 petition, the debtor was clearly attempting to obtain the benefit of the automatic stay which had been terminated in the Chapter 7 case. Had the debtor converted the Chapter 7 case to a Chapter 13, he would have had to seek to reimpose the stay, which is by no means automatically granted upon conversion. *See British Aviation Insurance Company, Ltd. v. Menut (In re State Airlines, Inc.)*, 873 F.2d 264, 269 (11th Cir.1989) (conversion from one chapter of the Bankruptcy Code to another does not trigger the automatic stay).

Debtor counters that a conversion from Chapter 7 to Chapter 13 would have been construed as bad faith, given that the debtor had already received a Chapter 7 discharge. This argument reinforces the majority rule, for if conversion of a Chapter 7 case to Chapter 13 after receiving a discharge constitutes bad faith, why is it not equally indicative of bad faith to file a new Chapter 13 case while that Chapter 7 case is pending? Moreover, this supposed impediment to the conversion of the case to Chapter 13 could easily be removed by the debtor, if he consented to vacate his Chapter 7 discharge.

Perhaps the debtor's clearest reason for filing a new Chapter 13 case, rather than converting the case from Chapter 7 to Chapter 13, is that the debtor upon conversion would be required to pay all the mortgage payments that had accrued from the initial filing of the Chapter 7 petition through the conversion to Chapter 13, which he conceded he was unable to do.

This does not justify the debtor's Chapter 13 filing, but rather shows that the debtor is attempting to manipulate the bankruptcy process to obtain the benefit of the automatic stay while evading the requirements of Chapter 13. *See* 11 U.S.C. § 1322(b)(2) and (b)(5) (which, taken together, prohibit a Chapter 13 debtor from modifying a home mortgage except by "curing any default" under a Chapter 13 plan while maintaining current mortgage payments during the pendency of the case).

Nor is this Court persuaded by the debtor's argument that he should not be penalized for the fact that the Chapter 7 case remains open for the Chapter 7 Trustee to prosecute the personal injury action. The Chapter 7 case is not being kept open simply for administrative reasons. Rather, the case remains open because the personal injury action is being pursued by the Chapter 7 Trustee, and may result in a recovery to creditors in the Chapter 7 estate. The debtor's Chapter 13 case includes (in addition to the secured first mortgage) two undersecured claims, which, pursuant to § 506(a) of the Bankruptcy Code are treated as unsecured creditors and will receive 10% of their claims under the Chapter 13 plan. There is no reason why the two unsecured creditors in the debtor's Chapter 13 case should not share in any recovery on an equal basis with the undersecured creditors in the Chapter 7 case. Conversely, there is no reason why the debtor's unsecured creditors in the Chapter 7 case should receive different treatment than the unsecured debt receives under the debtor's Chapter 13 plan. It is a basic principle of bankruptcy law that creditors whose claims have the same priority (such as unsecured creditors) should receive the same treatment, whether in Chapter 7 or Chapter 13. *See Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 2262–63, 110 L.Ed.2d 46 (1990) (observing that "equality of distribution among creditors is a central policy of the Bankruptcy Code" and that "creditors should receive pro rata shares of the debtor's property"); *see also Bishop v. U.S. (In re Leonard)*, 132 B.R. 226, 228–229 (Bankr.D.Conn. 1991) ( finding that Section 726(b) of the Bankruptcy Code was intended to insure that holders of claims at the same priority level be treated equally). The fact that the debtor's "simultaneous chapter 20" filing may result in disparate treatment of the debtor's unsecured creditors is another reason why this chapter 13 case should be dismissed.

### Conclusion

For all of the foregoing reasons, the Chapter 13 Trustee's motion to dismiss this case is granted.

IT IS SO ORDERED.