IN RE: Craig Arnold SORENSON, Debtor.

**Bankruptcy Case No. 17–11823 EEB**

United States Bankruptcy Court, D. Colorado.

Signed September 29, 2017

Karen Cody–Hopkins, Denver, CO, for Debtor.

## ORDER DENYING MOTION TO REINSTATE

Elizabeth E. Brown, Bankruptcy Judge

THIS MATTER comes before the Court on the Debtor's Motion to Reinstate. The Court dismissed this case because the Debtor already has a pending chapter 13 case. The Debtor is requesting that the Court allow him to have two pending chapter 13 cases so that he can include substantial new debt in the second case. For the following reasons, the Court hereby denies this request.

## I. BACKGROUND

The Debtor in this case has filed four bankruptcy cases in the past seven years. His first case, Case No. 10–24712, was a chapter 7 filing. He obtained his discharge on December 13, 2010. His creditors received no distribution from that case. He then filed a chapter 13 bankruptcy, Case No. 12–31419, which the Court dismissed on January 11, 2013 because the Debtor failed to file a chapter 13 plan. A few months later, he filed another chapter 13 case, Case No. 13–18816, which remains pending (the "2013 Case").

In the 2013 Case, the Debtor confirmed a plan in which he committed to pay one hundred percent of his claims from his monthly disposable income of $4,857 over sixty months, for a total of $291,420. From this amount, he will pay his first mortgage holder $215,233 to cure arrearages. He also moved to strip off three junior mortgages as wholly unsecured. The Court granted this request conditional on successful completion of his plan. His plan indicated he had no obligation to pay any domestic support obligation, but he owed priority tax debt of approximately $15,000. At the time the Debtor filed the instant case (the "2017 Case"), he had fifteen months remaining under his plan in the 2013 Case.

In the 2017 Case, the Debtor filed a plan in which he proposed to make payments of $500 per month for sixty months, or a total of $30,000. After payment of certain administrative claims, he proposed to pay his unsecured creditors $22,600. He indicated that he now has a monthly domestic support obligation in the amount of $3,303. Since his proposed plan made no provision

for it, apparently he planned to pay this claim directly to his former spouse rather than using the Trustee as a conduit. This plan also made no provision for the payment of secured debts or taxes. On his schedules, he listed three unsecured creditors who would share in the distribution to the unsecured class: his former attorney who is owed $26,046, a debt owed to MAV Capital for $150,700, and a debt to Southeast Investments NC, Inc. for $215,393. The Southeast Investments debt is described as arising from "FINRA Award # 15–02946." These three unsecured claims total $392,139, which is slightly below the chapter 13 ceiling on unsecured debts. 11 U.S.C. § 109(e). It appears that the debts addressed in this 2017 Case are different from the debts covered by the plan in the 2013 Case. All three debts are business-related debts and apparently arose after the filing of the 2013 Case.

In his Motion to Reinstate, Debtor's counsel explains his need for this second chapter 13 filing as:

> Mr. Sorenson holds a number of licenses as an investment advisor and agent. He is registered as licensed through FINRA, the Financial Industry Regulatory Authority, Inc. One of the new 2017 case debts is a FINRA award to a creditor for over $200,000. Mr. Sorenson was notified in late February 2017 that to stay licensed, he had to at least adopt one FINRA Rule 9554 solution by March 10, 2017: a) pay the award in full within 30 days (which he had not been able to do); b) reach a written repayment plan with the creditor (which he has not been able to do); c) file bankruptcy; or d) file a further appeal (which he was advised has issues and significant legal costs and where he may or may not prevail).

Motion to Reinstate ¶ 8. If he is not able to have two pending chapter 13 cases, the Debtor asserts he will lose his livelihood and, therefore, his ability to repay creditors.

## II. DISCUSSION

■ No section of the Bankruptcy Code expressly prohibits simultaneous cases. There is no prohibition in the national Bankruptcy Rules either. In fact, Fed. R. Bankr. Rule 1015 contemplates there may be more than one pending case against the same debtor at the same time. The rule states "[i]f two or more petitions by, regarding, or against the same debtor are pending in the same court, the court may order consolidation of the cases." Fed. R. Bankr. P. 1015(a). However, the Advisory Committee's Notes clarify the intended scope of this rule. It applies "when the same debtor is named in both voluntary and involuntary petitions, when husband and wife have filed a joint petition . . . when two or more involuntary petitions are filed against the same debtor . . . [and] when cases are pending in the same court by virtue of transfer." Fed. R. Bankr. P. 1015 advisory committee note. These are very limited circumstances. *See In re Montes*, 526 B.R. 397, 401 (Bankr. D.N.M. 2015); *In re Brown*, 399 B.R. 162, 166 (Bankr. W.D. Va. 2009).

In *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925), the Supreme Court established as a general rule that a debtor may not have two pending bankruptcy cases at the same time. In *Atkins*, the debtor filed his first bankruptcy and applied for a discharge. The bankruptcy referee recommended the court deny debtor's discharge but, for some reason, the court did not rule on the matter. Seven years later, the debtor filed a second case, seeking to discharge the debts from the first case as well as debts incurred after the first filing. The Supreme Court affirmed the lower court's decision to deny discharge of the older debts in the second case. It held that "the pendency of a prior

application for discharge is available in abatement as in the nature of a prior suit pending, in accordance with the general rule that the law will not tolerate two suits at the same time for the same cause." *Id.* at 122, 46 S.Ct. 41. The Court further remarked that filing the second case with knowledge his first was still pending "was an imposition upon and an abuse of the process of the court." *Id.* at 124, 46 S.Ct. 41.

Some courts interpret the *Atkins* decision narrowly, holding that the Supreme Court did not actually bar the debtor from having two pending cases, but only from discharging the debts from his first case in the second. *See, e.g., Grimes v. U.S. Farmers Home Admin. (In re Grimes)*, 117 B.R. 531, 536 (9th Cir. BAP 1990). Many more courts prohibit debtors from having two simultaneous bankruptcy cases. In *In re Sidebottom*, 430 F.3d 893 (7th Cir. 2005), the debtors filed a chapter 7 case and received their general discharge, but one of their creditors filed a nondischargeability suit. Shortly before trial, the debtor filed a chapter 13 case seeking to utilize its super-discharge to forestall the objecting creditor's suit. Relying on *Atkins,* the court said that, "the effort to litigate the same matter simultaneously in the Chapter 13 proceeding should have been rejected on the grounds of 'same matter pending.'" *Id.* at 898. It also reasoned that "[a]llowing [the debtor] to proceed with the Chapter 13 case significantly affects the Chapter 7 trustee's ability to administer the estate, because it will change how much each creditor gets paid if the [objecting creditor's] claims are resolved through the Chapter 13 process." *Id.* at 899. Many courts have rejected simultaneous cases on similar grounds. *E.g., In re Shankman*, 382 B.R. 591, 595 (Bankr. E.D.N.Y. 2008); *In re Scruggs*, 320 B.R. 94, 97 (Bankr. D.S.C. 2004); *In re Lord*, 295 B.R. 16, 19–20 (Bankr. E.D.N.Y. 2003); *In re Picker-*

*ing,* 195 B.R. 759, 766 (Bankr. D. Mont. 1996); *In re Del. Valley Broadcasters, Ltd. P'ship,* 166 B.R. 36, 40–41 (Bankr. D. Del. 1994); *In re Cross Timbers Ranch, Inc.*, 155 B.R. 215, 217 (Bankr. W.D. Mo. 1993); *In re Valparaiso Motel Corp.*, 125 B.R. 228, 229 (Bankr. N.D. Ind. 1990); *In re Bodine,* 113 B.R. 134, 135 (Bankr. W.D.N.Y. 1990); *In re Keen,* 121 B.R. 513, 514 (Bankr. W.D. Ky. 1990); *In re Fulks,* 93 B.R. 274, 275 (Bankr. M.D. Fla. 1988); *In re Jackson,* 108 B.R. 251, 252 (Bankr. E.D. Cal. 1989); *In re Smith,* 85 B.R. 872, 873–74 (Bankr. W.D. Okla. 1988).

Some courts bar simultaneous cases based on the "single estate rule." This rule prevents simultaneous filings because "filing of simultaneous petitions is 'contrary to the obvious contemplated function of the Bankruptcy Code to resolve a debtor's financial affairs by administration of a debtor's property as a single estate under a single chapter within the code.'" *Turner v. Citizens Nat'l Bank of Hammond (In re Turner)*, 207 B.R. 373, 378 (2d Cir. BAP 1997) (citing *In re Kosenka*, 104 B.R. 40, 46 (Bankr. N.D. Ind. 1989)). In other words, the same property cannot simultaneously be property of two different bankruptcy estates. *Grimes v. U.S. Farmers Home Admin. (In re Grimes)*, 117 B.R. 531, 535 (9th Cir. BAP 1990).

A growing number of courts permit the filing of a "simultaneous chapter 20 case" under certain circumstances. Normally, a "chapter 20 case" involves the sequential filing of a chapter 13 case after a chapter 7 case has concluded. However, sometimes a significant period of time elapses after a debtor receives his discharge but before the chapter 7 trustee closes the case, often tied to the length of time it takes for the trustee to liquidate assets. While the chapter 7 discharge relieves the debtor of his personal liability on all dischargeable debts, he may still need to address arrear-

ages on secured debts. The most common example is the debtor's mortgage. Following the chapter 7 discharge, the mortgage becomes a non-recourse debt, but the secured creditor retains its lien and, therefore, its ability to foreclose. If permitted to file a chapter 13 case while the chapter 7 case remains pending, the debtor may be able to confirm a plan that will cure the mortgage arrears. Having shed other debts in his chapter 7 case, he now has more funds available to effectuate a cure. If, however, courts erect a *per se* bar against having two pending cases, then the debtor loses this opportunity due to circumstances beyond his control, *i.e.* the length of time it takes the chapter 7 trustee to close his case. In other cases, the debtor may need to utilize chapter 13 to address nondischargeable debts that survived the chapter 7 filing, such as taxes or domestic support obligations. Thus, there may be legitimate reasons to allow a "simultaneous chapter 20," which refers to having a chapter 7 case and a chapter 13 pending at the same time. "In the absence of statutory language or legislative history indicating that Congress intended otherwise, a *per se* rule that bars an entire category of debtors from using this procedure is not warranted." *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434, 1436 (11th Cir. 1989). Instead of erecting a blanket prohibition against the simultaneous chapter 20 case, the "good faith requirement of 11 U.S.C. § 1325(a)(3) is sufficient to prevent *undeserving* debtors from using this procedure, yet does not also prevent *deserving* debtors." *Id.* (emphasis in original).

However, even in those jurisdictions that reject a *per se* bar to the simultaneous chapter 20 case, most courts will not permit a debtor to have simultaneous cases when the chapter 13 case is filed before the debtor has received his chapter 7 discharge. These courts view the second filing

as a "nullity." *Turner v. Citizens Nat'l Bank of Hammond (In re Turner)*, 207 B.R. 373, 378 (2d Cir. BAP 1997); *see also In re Hodurski*, 156 B.R. 353, 356 (Bankr. D. Mass. 1993); *Assocs. Fin. Servs. Corp. v. Cowen (In re Cowen)*, 29 B.R. 888, 894 (Bankr. S.D. Ohio 1983); *Davis v. Mather (In re Davis)*, 239 B.R. 573, 575 n. 2 (10th Cir. BAP 1999); *In re Montes*, 526 B.R. 397, 401–02 (Bankr. D.N.M. 2015); *Grimes v. U.S. Farmers Home Admin. (In re Grimes)*, 117 B.R. 531, 536 (9th Cir. BAP 1990) (allowing chapter 11 and chapter 12 simultaneous filings where debtor had already received chapter 11 discharge). These courts reason that, if a chapter 13 filing occurs before entry of the chapter 7 discharge, all of the debts will be debts of both cases. How can a chapter 7 trustee and a chapter 13 trustee coordinate who and how much each of the estates will pay these creditors?

Nevertheless, a small number of courts have permitted a simultaneous chapter 7 and chapter 13 case even when the discharge had not yet entered in the chapter 7 case. In *Transamerica Credit Corp. v. Bullock (In re Bullock)*, 206 B.R. 389 (Bankr. E.D. Va. 1997), the debtor had filed for chapter 13 relief and completed her plan. She then received her discharge. She mistakenly thought that the discharge meant she no longer had to pay her mortgage and, for the next couple of years, she made no mortgage payments. Eventually, her lender initiated foreclosure proceedings. She then filed a chapter 7 case. The lender promptly obtained stay relief. While her chapter 7 case was still pending, and before she had received her chapter 7 discharge, the debtor filed a second chapter 13 case to try to save her home. The Court ruled that the second chapter 13 case did not violate the *Atkins* rule because the debtor was not trying to discharge her mortgage in the second case.

The Court also rejected the "single estate rule," finding no support for it in the Code or its legislative history, deeming it "nothing more than a practical, judicial choice among competing philosophies in the face of a void left by Congress." *Id.* at 393. Finally, while recognizing that,

> [I]n general ... a debtor should not have multiple pending bankruptcy cases, the court nevertheless must retain the ability to treat varying situations in an equitable manner and in keeping with the purposes of the Code. Thus, if the equities ... so dictate and if a second filing will not materially hinder the efficient administration of the debtor's estate, the court may recognize the viability of the second case.

*Id.*

Similarly, in *In re Arellano*, 363 B.R. 611 (Bankr. D.N.M. 2007), the debtors filed a chapter 13 to prevent foreclosure one month prior to receiving their chapter 7 discharge. The court found no bar to the second case where the delay in entering the discharge was the fault of the court and not of the debtors. In the chapter 13 case, the debtors sought only to cure secured debts.

Very few reported decisions have addressed the issue of two pending chapter 13 cases. In two such cases, the courts allowed simultaneous chapter 13 filings, but only on a very temporary basis. In *In re Sanchez–Dobazo*, 343 B.R. 742 (Bankr. S.D. Fla. 2006), the debtor filed a second chapter 13 case when he had only one payment left under his prior chapter 13 plan. In *In re Whitmore*, 225 B.R. 199 (Bankr. D. Idaho 1998), the debtors moved to dismiss their first chapter 13 case one day before filing the second case but, as a result of clerical error, the two cases overlapped by six days. In a third case, *In re Cormier*, 147 B.R. 285 (Bankr. D. Maine 1992), the debtors requested a "release" of

their first chapter 13 case ten days after filing their second case and the first case closed one month later. The *Cormier* court said it would not automatically dismiss the second case, but would consider whether there had been a change in circumstances between the first and second petitions sufficient to warrant a finding of good faith in connection with the second filing.

In two other cases, the courts dismissed the second chapter 13 filing. In *In re Brown*, 399 B.R. 162 (Bankr. W.D. Va. 2009), the court dismissed the debtor's second case based on the Supreme Court's *Atkins* decision because he listed his mortgage debt in both chapter 13 cases. The court also found the debtor filed his second case in bad faith because the clear purpose of the second filing was to reinstitute the automatic stay that had terminated in the first case due to the debtor's default on a stipulated agreement with his mortgage lender. In *In re Brandford*, 386 B.R. 742 (Bankr. N.D. Ind. 2008), the court dismissed the debtor's second chapter 13 case even though she had completed all the payments in her first case. The Court observed that the debts from the first chapter 13 had not been discharged until two months after the debtor filed her second case. Though the Debtor listed only her mortgage debt in the second case, the court ruled that the rest of the debts from the first case were still existing debts and, therefore, the debtor should have listed them in the second case. Applying *Atkins*, the court dismissed the second case for cause.

From all of these cases, a few guiding principles emerge. First, there is no congressional prohibition against two pending cases. As a general rule, however, a debtor should have only one bankruptcy case pending. The debtor's assets and debts should be administered in a single estate to avoid inconsistencies. Simulta-

neous cases should be allowed for very limited purposes and only for a brief period of time. Absent a binding precedent to the contrary, the one exception to this rule this Court will accept is the simultaneous chapter 20 scenario, provided that the chapter 7 case is essentially a "no-asset" case and the debtor has already received a discharge. The good faith requirement in § 1325(a)(7) will allow the Court to curb any abuses that may arise from this practice.

Simultaneous reorganization cases, however, present a horse of a different color. The facts of the present case illustrate well the dangers of allowing this practice. According to the claims register in the first chapter 13 case, the Debtor had unsecured debts in excess of $88,000. In the second chapter 13 case, he listed additional unsecured debts exceeding $392,000. Combining the unsecured debts in both cases would greatly exceed the statutory ceiling on unsecured debt in chapter 13, rendering the Debtor ineligible for chapter 13 relief. 11 U.S.C. § 109(e). If courts were to allow debtors to split up their debts in different cases, it would effectively create an end run around a clear congressional mandate. In the same way, debtors could also effectively work around the statutory limitation of five years for their commitment period in chapter 13. See 11 U.S.C. § 1322(d).

Moreover, the danger of discriminatory treatment of like claims may arise, as it has in the present case. In the Debtor's first case, he committed to pay his claims in full. In the proposed plan filed in the second case, his unsecured creditors would have received less than a six percent distribution.

Finally, simultaneous reorganization cases are administratively untenable. The same postpetition earnings would be committed to two different plans. Modification of a plan in one case would likely require adjustment in the other case. Dismissal of only one case could create a host of problems. Assume that the debtor confirmed a plan in one case and, as usual, the assets of the estate vested in the debtor at confirmation, which would mean his earnings no longer enjoyed protection as property of the estate. In the dismissed case, the creditors would be free to pursue their rights against the debtor and his assets, but the creditors in the pending case would remain bound by the confirmed plan. How would the debtor in this scenario be able to withstand garnishment attacks from the creditors in the dismissed case while still committing his disposable income to the creditors in the pending case? Or perhaps the creditors from the dismissed case would then be considered creditors of the pending case, and yet they might not be able to file timely claims at that point in the pending case. What about cases in which the debtor has to commit additional funds to the plan to satisfy the best interests of creditors test? Would he not have to do so in both cases? These are just a few of the issues and potential pitfalls that may arise with simultaneous reorganization cases.

The Court understands the rationale for allowing two pending chapter 13 cases when the overlap is very brief—a matter of days and not weeks. If there is an issue of a bad filing with the second case, the Court can address that with § 1325(a)(7). Beyond that brief interval, however, statutory and administrative concerns outweigh the debtor's need for two pending reorganization cases.

## III. CONCLUSION

For the foregoing reasons, the Court hereby DENIES the Debtor's Motion to Reinstate.